THOMPSON–STARRETT INTERNATIONAL, INC.
and MARYLAND CASUALTY COMPANY

v.

TROPIC PLUMBING, INC.

THOMPSON–STARRETT, INTERNATIONAL, INC.,

Appellant in No. 71-1698

MARYLAND CASUALTY COMPANY, Appellant in No. 71-1699

Nos. 71-1698, 71-1699

United States Court of Appeals

Third Circuit

Argued January 26, 1972

Decided March 17, 1972

RONALD T. MITCHELL, ESQ., Charlotte Amalie, St. Thomas, V.I., *for appellant*

ARNOLD M. SELKE, ESQ. (CORNEIRO & GIBBS), Charlotte Amalie, St. Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge*, ALDISERT and GIBBONS, *Circuit Judges*

OPINION OF THE COURT

GIBBONS, *Circuit Judge*

Appellant, Thompson-Starrett International, Inc. (Thompson-Starrett), a general contractor, appeals from a final order granting a summary judgment of $24,123.63 to Tropic Plumbing, Inc. (Tropic Plumbing), a subcontractor, for labor and materials furnished by Tropic in the erection of a housing project in St. Thomas, Virgin Islands, owned by Bluebeard Housing Corp. (Bluebeard). Bluebeard is a non-profit sponsor approved for federal mortgage insurance issued by the Federal Housing Administration pursuant to § 221(d)(3) of the National Housing Act, 12 U.S.C. § 17151(d)(e). Under this program the federal government insures mortgages from non-profit sponsors of housing projects for 100% of approved project costs. Since

such a project is built essentially upon the credit of the federal government's 100% mortgage guarantee, the F.H.A. has established procedures under which it approves plans and specifications, sets limits upon costs, and supervises interim and final advances on the insured mortgage loan. See 24 C.F.R. § 221.547–558. The construction contract between the non-profit mortgagor and the general contractor must be on F.H.A. form contracts, 24 C.F.R. § 221.548: in this case F.H.A. Form No. 2442-A. By that form contract, dated December 11, 1964, Thompson-Starrett undertook to erect the project for the actual cost of construction plus a fee of $125,000, with a provision for sharing cost savings, below an estimated cost, between the non-profit mortgagor and the contractor. The form contract requires that the work be done in accordance with a list of approved drawings and in accordance with the approved specifications, which include the "General Conditions of the Contract." These general conditions include Articles one to forty-four of the standard form, current edition, of the American Institute of Architects and the F.H.A. Supplementary General Conditions. The form contract provides:

"All requests for changes in the Drawings and Specifications must be in writing signed by the Owner and the Lender and shall be conditioned upon acceptance by the [F.H.A.] Commissioner, which acceptance may be subject to such conditions and qualifications as the Commissioner in his discretion may prescribe, it being understood that the Commissioner at all times has the right to require compliance with the original Drawings and Specifications."

Thompson-Starrett and Tropic Plumbing on February 5, 1965 entered into a subcontract by which Tropic Plumbing undertook for a fixed price of $133,250.00 to perform plumbing work called for in Division 29 and the underground piping called for in Division 32 of the specifications. The preamble of the February 5, 1965 subcontract refers to

527

the general contract documents" . . . which are on file in the office of the Contractor and have been examined by the Subcontractor, and which the parties do hereby expressly make a part hereof with the same force and effect as if the same were physically incorporated herein. . . ." Article 3 of the subcontract provides for monthly progress payments equal to 90% of the value of the work completed from month to month" . . . provided, however, that the Owner shall theretofore have paid the Contract on account of such Work completed . . . ." The ten percent retainage ". . . shall be paid by Contractor to the Subcontractor within five (5) days after the Contractor receives the final payment from the Owner, except as to any sums which Owner may retain for a guarantee period, in which case a corresponding sum may be retained by Contractor against Subcontractor as to Work covered by any such guarantee, to be paid when such retention is released by the Owner and paid to Contractor . . ." The subcontract also provides:

"8. The Subcontractor shall be bound by the decision of those authorized by the General Contract as to the meaning of any terms and conditions of the General Contract Documents as the same may affect the Work hereby let to the Subcontractor. The Subcontractor shall comply with all the terms of the General Conditions made part of the General Contract Documents and of all the other terms and conditions of any of the other General Contract Documents insofar as applicable to the Work of the Subcontractor, and the Subcontractor hereby agrees that the Contractor shall have the same power as regards terminating this agreement that the Owner may exercise over the Contractor under any of the provisions of the General Contract Documents.

"9. The Subcontractor hereby assumes towards the Contractor all the obligations and responsibilities that the Contractor has assumed under the General Contract towards the Owner, and the Subcontractor hereby agrees that all the limitations and duties to which the Contractor is bound to the Owner by the terms of the General Contract shall be deemed the limitations and duties to which the Subcontractor in turn shall be bound to the Contractor. . . ."

"29. . . . . The Subcontractor shall at no time question the determination of the Owner or its representatives authorized to act upon any dispute affecting any of the Work hereby sublet; it being the express intention of the parties that the Contractor shall be under no greater obligation to the Subcontractor than the Owner may have to the Contractor by reason of the subject matter of any such dispute as aforesaid. . . ."

During the course of construction Tropic Plumbing proposed and, insofar as the present record discloses, Thompson-Starrett approved, certain change orders which would, if binding on the parties, have the effect of increasing the Subcontract price by $15,475.36. At the final closing with F.H.A., however, when Thompson-Starrett presented these change orders for approval, the F.H.A., acting pursuant to the provision in the general construction contract quoted above, refused to approve disbursement of mortgage funds for their payment.

 Tropic Plumbing, moving for summary judgment, contended that once an officer of Thompson-Starrett approved the change orders it became obligated to pay the approved amounts whether or not the F.H.A. approved them for disbursement of mortgage funds. The district court accepted this contention, holding that it need not look beyond the text of the February 5, 1965 subcontract to determine Thompson-Starrett's liability. Its opinion states:

"Each of the change orders in question complied with the requirements of paragraph 4 of the subcontract[1] . . . that all change orders

---

[1] Paragraph 4 of the subcontract provides:

"The Subcontractor shall be entitled to receive no extra compensation for changes or extra work of any kind whatsoever regardless of whether the same was ordered by the Contractor or any of its representatives, unless such extra order is given in writing signed by an officer of the Contractor, and the Subcontractor agrees that it will make no claim that it was authorized to do any extra work or make any modification in its Work by the Contractor or any of its representatives at the site or elsewhere, and if such work was so ordered and the Subcontractor has performed the same but has received no written order therefor as herein provided for, the Subcontractor shall be deemed to have waived any claim for extra compensation therefor regardless of any written or verbal protests or claims by the Subcontractor."

be in writing and signed by an officer of Thompson-Starrett. Compliance with these specific terms of the contract must prevail over terms that defendants wish to read into the subcontract through the catch-all term providing for plaintiff's assumption of the general contract." (footnote added).

Thus despite the specific language of the subcontract which incorporated the terms of the general contract and the specifications by reference, and despite the reality that the F.H.A. as guarantor of a 100% mortgage was the party chiefly interested in both in cost and in compliance with the plans and specifications, the district court, without a hearing and over Thompson-Starrett's objection granted summary judgment. In justifying this result it reasoned:

"If Thompson-Starrett intended that plaintiff should assume the risk of its failure to obtain prior F.H.A. approval of change orders, this should have been more clearly expressed."

The district court, in other words, determined that there was an ambiguity in the text of the contract and without hearing testimony resolved that ambiguity in favor of Tropic Plumbing. This ruling went beyond the permissible scope of Fed. R. Civ. P. 56. Assuming an ambiguity, the liability of the parties to the contract still depended upon their intention. Restatement of Contracts § 226 (1932); S. Williston, Contracts § 601 (3d ed. 1961). That intention, where the instrument is ambiguous, should be determined by resort to parol evidence. Restatement of Contracts, supra §§ 230, 231, 235(d), 238(a). Possibly the ambiguity would disappear in the light of testimony about the customs and usages of the construction industry. Restatement of Contracts, supra §§ 245, 246(a), 247(b), (c), 248(2); Williston, supra at § 648. There was a genuine fact issue as to the undertaking of the parties and it could not be resolved by summary judgment. McLanahan v. Universal Insurance Co., 26 U.S. (1 Pet.) 129, 140 (1828); Williston, supra at § 662.

Tropic Plumbing also contends that by approving the change orders and delaying their submission to the F.H.A. until the final mortgage closing, and until after the completion of the work, Thompson-Starrett waived any contract provision which would make F.H.A. approval a condition of payment for the alleged extras. Since the district court ruled that there was no such contract provision it did not reach the waiver issue. It noted correctly, however, that any such waiver would present a fact issue inappropriate for resolution on a motion for summary judgment. Ross Engineering Co. v. Pace, 153 F.2d 35, 49–50 (4th Cir. 1946).

Tropic Plumbing advances in this court the contention, noted but not relied upon by the district court, that certification to the F.H.A. of actual cost of the project, including the disputed change orders, precludes Thompson-Starrett from contesting payment of the change orders. It relies on 24 C.F.R. § 221.588:

"Upon the Commissioner's approval of the mortgagor's certification as required by § 221.550 such certification shall be final and incontestable except for fraud or material misrepresentation on the part of the mortgagor."

24 C.F.R. § 221.551 requires that where a cost plus form of contract is used the mortgagor submit, along with its certification of actual cost a certification of the general contractor as to all actual costs paid for labor, materials and subcontract work under the general contract. The purpose of this certification is to fix the limit of the federal government's liability on its contract of mortgage insurance. The amount of that liability becomes incontestable when the Commissioner approves the certification. If the Commissioner had approved the certification, including the amount of the contested change orders, there would be no lawsuit.

531

Here the change orders apparently were excluded from his approval. The cited F.H.A. regulations confer no benefit upon Tropic Plumbing.

■ Tropic Plumbing also contends that the pretrial order precludes Thompson-Starrett from contesting the amount of the extras, and thus justifies the summary judgment. We do not read the pretrial order in this way. Thompson-Starrett stipulated that the work covered by the change orders was done and that it included the amount in its certification of costs to the F.H.A., but it asserts that it has not been paid the amounts of the change orders and that under the contract documents if the F.H.A. does not approve payment it need not pay Tropic Plumbing.

■ One other aspect of the case remains to be dealt with. The judgment appealed from includes a sum representing the amount of each monthly invoice from Tropic Plumbing retained by Thompson-Starrett pursuant to paragraph 3 of the subcontract. Tropic Plumbing contends that this sum is ten percent of the original contract price, of $133,325.00. Thompson-Starrett points out that the suit was for $24,123.63, which included a claim for the ten disputed change orders totaling $15,475.36. Thus, it contends, Tropic Plumbing has already been paid all of the retainage except the difference between $15,475.36 and $24,123.63, or $8,648.27. The district court awarded judgment in the gross sum of $24,123.63, and made no finding as to how much was due on the retainage claim.

Moreover Thompson-Starrett, while acknowledging that it does not dispute Tropic Plumbing's right to be paid whatever part of the retainage remains unpaid, does contend that it is under no obligation to pay the full amount while the owner retains, during the guarantee period, a retainage for work done by Tropic Plumbing. On the present record it is impossible to tell whether any of the

retainage held by the owner is applicable to the work of Tropic Plumbing.

Thus the judgment must be reversed in its entirety. On remand, however, Thompson-Starrett may not be heard to contest its obligation to pay that amount of the retainage which remains unpaid and which does not represent retainage held by the owner during a guarantee period for work performed by Tropic Plumbing.

The summary judgment will be reversed and the case remanded for further proceedings consistent with this opinion.