**CAPITAL BLUE CROSS, Plaintiff,**

v.

**PAID PRESCRIPTIONS, INC., and/or Health Systems Institute, and/or Paid Prescriptions of California, Inc., Defendants.**

**Civ. A. No. 78–1256.**

United States District Court,
M. D. Pennsylvania.

Sept. 2, 1980.

Harvey Freedenberg, McNees, Wallace & Nurick, Harrisburg, Pa., for plaintiff.

John R. Zonarich, Skarlatos & Zonarich, Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

Presently before the court is plaintiff's motion for summary judgment and defendant's [1] motion for leave to file a third party complaint. Subsequent to a finding by this court that the Commonwealth of Pennsylvania was not an indispensible party to the instant action (See Memorandum filed September 7, 1979), plaintiff filed a set of interrogatories on October 12, 1979 and a request for admissions on March 18, 1980, which were answered on February 28, 1980 and April 15, 1980 respectively. On April 30, 1980 plaintiff filed its motion for summary judgment, which defendant opposes. Defendant then filed its motion for leave to file a third-party complaint on May 28, 1980, which is opposed by plaintiff. This memorandum will address both motions.

### A. *Motion For Summary Judgment*

It is undisputed that a motion for summary judgment may not be granted where there exists a genuine issue of material fact, *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781 (3rd Cir. 1978), even if it is the movant's rather than the opposing party's documents which demonstrate the existence of material factual issues. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Plaintiff alleges that defendant, in its reply to plaintiff's request for factual admissions, admits the following:

1. That plaintiff and defendant entered into a contract as embodied in the

---

1. The caption of this case lists the defendants as PAID PRESCRIPTIONS, INC., and/or HEALTH SYSTEMS INSTITUTE, and/or PAID PRESCRIPTIONS OF CALIFORNIA, INC. In defendant's answer to plaintiff's request for admissions of fact, defendant admits that Health Systems Institute is the successor in interest to Paid Prescriptions, Inc. as to any and all liabilities which Paid Prescriptions, Inc. may have to plaintiff pursuant to the Letter of Agreement dated June 29, 1977. Reference to defendant in the remainder of this memorandum, therefore, refers to Health Systems Institute.

Letter of Agreement, dated June 29, 1977;

2. That the final accounting between plaintiff and defendant indicated defendant owed plaintiff a net amount of $168,979.36;

3. That defendant acknowledged at least partial liability to plaintiff in the sum of $100,000.00 in a letter from defendant's general manager to a third party;

4. That defendant acknowledged its liability to plaintiff in a subsequent letter, indicating that funds made available by the release of a performance bond would enable defendant to pay plaintiff; and

5. That an audit report of defendant as of November 30, 1977, indicates defendant had current liabilities in the amount of $168,979.00 owing to plaintiff.

Plaintiff contends that these admissions, coupled with this court's previous finding that the contract in question was a sub-contract, as opposed to an assignment of a contract, eliminates any factual issues and submits it is entitled to summary judgment as a matter of law.

Defendant, in its brief opposing the motion for summary judgment, disagrees with plaintiff's statement that no genuine issues of fact remain. Defendant contends that

[B]ecause of the need to interpret documents pertaining to a very sophisticated program in a transition stage from Paid [defendant] to Blue Cross [plaintiff] and the resultant need to determine from these documents whether an assignment or subcontract arose and whether Paid was a mere conduit with responsibility for payment ultimately in the control of the State Department there is reason to deny Plaintiff's Motion.

Defendant apparently does not contest the fact that the Letter of Agreement dated June 29, 1977 constitutes the total agreement between plaintiff and defendant, nor does defendant contend the agreement, either in part or in toto, is unclear, incomplete, or ambiguous and should be given an interpretation different from that of plaintiff. In essence, defendant admits to everything averred by plaintiff with the exception that defendant denies the documents "establish any present, outstanding liability" to plaintiff because the agreement should be classified as an "assignment" as opposed to a "subcontract".[2]

Defendant's main contention, that the determination of whether the agreement constituted an assignment or a subcontract is a jury question, is not well founded in the law; particularly in light of defendant's admissions. In the case of *Hamilton v. Liverpool, London and Globe Insurance Company*, 136 U.S. 242, 255, 10 S.Ct. 945, 949, 34 L.Ed. 419 (1890), the United States Supreme Court held that the construction and effect of a correspondence in writing, which did not depend in any degree on oral testimony or extrinsic facts, presented "a pure question of law, to be decided by the court." Since then, the general rule has been that the interpretation of a writing is for the court and such interpretation has largely been withdrawn from the jury. *Goldinger v. Boron Oil Co.*, 375 F.Supp. 400, 413 (W.D.Pa.1974), *aff'd*., 511 F.2d 1393 (3rd Cir.), *cert. denied*, 423 U.S. 834, 96 S.Ct. 59, 46 L.Ed.2d 52 (1975); *Continental Casualty Company v. Beelar, M. D.*, 405 F.2d 377, 378 (D.C.Cir.1968). *See also* 4 W. Jager, *Williston On Contracts* § 616 (3d ed. 1961). Defendant has conceded that there are no extrinsic facts or oral testimony that conflict with or place in issue any of

---

**2.** Defendant, in its reply to plaintiff's request for admission, stated the following:

The Defendants admit the genuineness of the documents referenced in Plaintiff's Request for Admissions subparagraphs 1a through 1m. The Defendants admit that the documents are an accurate portrayal of the Defendant's obligations to the Plaintiff on the date of publication of saod [sic] documents.

The Defendant further admits that HEALTH SYSTEMS INSTITUTE is the successor in interest to PAID PRESCRIPTIONS, INC., as to any and all liabilities which PAID may have to Capital Blue Cross pursuant to the Letter of Agreement dated June 29, 1977.

It is denied that the above-referenced documents establish any present, outstanding liability of Defendants to Plaintiff.

the terms of the contract. What defendant disagrees with is the classification of the agreement as a subcontract. As pointed out above, however, under these circumstances the determination of whether the agreement is a subcontract or assignment is *purely* a question of law to be determined by the court and is not a jury question.

■ Admittedly, the court's determination is based upon facts, but these facts are clear and uncontested. As pointed out in this court's Memorandum dated September 7, 1979, the agreement between plaintiff and defendant was only for a portion of the services defendant was required by contract to provide for the Commonwealth of Pennsylvania, the Letter of Agreement expressly states on the first page that the agreement is "in effect, a subcontract under your [defendant's] current contract with the Commonwealth", and most persuasively both parties treated that agreement as a subcontract until difficulties arose. Additionally, it is noted that contracting parties are identified as plaintiff and defendant, no mention of an assignment of rights or delegation of duties arising out of defendant's contract with the Commonwealth of Pennsylvania is made, and the performance required of plaintiff under the agreement between plaintiff and defendant is identical to the performance required of defendant under a portion of the contract between defendant and the Commonwealth of Pennsylvania. Given these uncontested facts, the court is convinced the agreement between plaintiff and defendant was a subcontract and not an assignment.

■ In *Goldinger, supra*, the court held that summary judgment is properly used when interpreting a contract whose terms are unambiguous and uncontested, despite parties' divergent views of what the agreement provided. In the case *sub judice*, a similar fact situation exists; defendant does not contest the existence or the express terms of the agreement, only the legal effect to be given to the writing. Further, defendant does not contend that plaintiff is not entitled to the amount of money plaintiff seeks under the contract,[3] merely *who* is primarily responsible for payment thereof. Accordingly, the court is of the opinion that summary judgment in favor of plaintiff is justified in this instance.

It is not without deference to the cautions against granting summary judgment given in several Third Circuit Court of Appeals cases, namely *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141 (3rd Cir. 1972) and *Thompson–Starrett International, Inc. v. Tropic Plumbing, Inc.*, 457 F.2d 1349 (3rd Cir. 1972) that the court makes its holding. The court finds these cases clearly distinguishable. In *Olympic*, the defendant alleged the contract was too vague and indefinite to enforce, including the price for the sale of a business. The court held

> [S]ince the terms of the agreement are themselves in issue, to attempt to determine at this stage of the litigation whether terms are too vague to enforce would be mere speculation. *Id.* at 1147.

In so holding, the court reversed the lower court and denied a motion for summary judgment. In the instant case, however, the terms of the contract, particularly the amount, are not in issue, only the legal effect; hence *Olympic* is inapposite. In *Thompson–Starrett*, there was again an ambiguity in the contract itself, affecting the liabilities of the parties. The circuit court held that *assuming ambiguity in the contract*, parol evidence should have been permitted to determine the intent of the parties, making summary judgment inappropriate. As stated previously, however, there is no ambiguity with respect to the agreement in this case, eliminating the need for parol evidence. The only question to be resolved in the instant case is a question

---

**3.** Defendant does not contest that as of July 18, 1978, $168,979.26 was due and owing plaintiff under the terms of the Letter of Agreement dated June 29, 1977; that the Final Accounting, signed by an authorized agent of defendant, indicated the same amount was due and owing plaintiff under the Letter of Agreement; and that a balance sheet of defendant, prepared by Pennsylvania Department of Public Welfare, on November 3, 1978, indicates defendant owed plaintiff $168,979.00 allegedly for performance under the Letter of Agreement. Instead, defendant admits that these documents "are an accurate portrayal of the defendant's obligations to the plaintiff on the date of publication."

of law to be determined from uncontested facts.

B. *Motion for Leave to File Third–Party Complaint*

Inasmuch as the court has granted plaintiff's motion for summary judgment, defendant's motion to file third–party complaint becomes moot. Even in the absence of the granting of plaintiff's motion for summary judgment, the court is of the opinion that defendant's motion should be denied pursuant to Local Rule 301.04, which provides in pertinent part:

(a) A motion by a defendant for leave to bring in a third–party defendant under F.R.Civ.P. 14(a) shall be made within three (3) months after an order has been entered setting the case for trial, or within six (6) months from the date of service of the moving defendant's answer to the complaint, or whichever shall first occur.

Section (c) of that rule provides that if a showing of good cause is made, the rule may be suspended. Defendant has not carried its burden of establishing good cause for the delay.