**Daniel J. HOULIHAN, Trustee For Pocono Downs, Inc., Debtor In Reorganization Under Chapter X of the Bankruptcy Act, Plaintiff,**

v.

**EAST SIDE LANDFILL AUTHORITY, City of Wilkes-Barre, Township of Plains, Borough of Ashley, and Township of Hanover, Defendants.**

Civ. No. 82–1612.

United States District Court, M.D. Pennsylvania.

March 6, 1984.

Thomas P. Kennedy, Francis J. Wormuth, Kennedy, Hodin & Wormuth, Scranton, Pa., Bruce D. Shuter, Joseph A. Dworetzky, Cynthia J. Giles, Drinker Biddle & Reath, Philadelphia, Pa., for plaintiff.

Charles D. McCormick, Wilkes-Barre, Pa., for Borough of Ashley.

B. Todd Maguire, Wilkes-Barre, Pa., for East Side Landfill.

William F. Anzalone, Ronald P. Sweeda, Hourigan, Kluger & Spohrer, Wilkes-Barre, Pa., for Township of Plains.

Donald H. Brobst, and Jos. B. Finlay, Rosenn, Jenkins & Greenwald, Wilkes-Barre, Pa., and John L. McDonald, Mountaintop, Pa., for Township of Hanover.

Carl N. Frank, City Atty., Wilkes-Barre, Pa., for City of Wilkes-Barre.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff, Daniel J. Houlihan, trustee in bankruptcy for Pocono Downs, brought this action against the named defendants alleging breach of a landfill contract. One of the defendants, East Side Landfill Authority (Authority), is a municipal authority formed on or about May 12, 1964, by the remaining defendants, *viz.*, the City of Wilkes-Barre, the Township of Hanover, the Township of Plains, and the Borough of Ashley, for the purpose of providing the municipalities with facilities for solid waste disposal. By written agreements, the municipalities promised to appropriate from their annual budgets sufficient funds to pay the Authority's expenses including principal and interest on any indebtedness incurred. Plaintiff has filed a motion for partial summary judgment against the Au-

thority which is now ripe for disposition. After careful consideration, the court will grant plaintiff's motion for partial summary judgment.

BACKGROUND

On October 31, 1970, Pocono Downs entered into a lease with the Authority whereby the Authority rented 170 acres of land for use as a landfill area for solid waste disposal. The Authority agreed to conduct all operations in accordance with "the Pennsylvania Solid Waste Management Act, all rules and regulations of the Pennsylvania Department of Health pertaining to the same, together with all ordinances, resolutions, rules and regulations of any political subdivision, or any agency or department thereof having jurisdiction over the lessee's landfill operation." Lease attached to Plaintiff's Motion for Partial Summary Judgment as Exhibit A at 1, Document No. 63 of the Record. The Authority also agreed to indemnify and save harmless the plaintiff, its successors and assigns, from all claims and demands arising from the landfill operation. At the time of opening the landfill site, the Authority received a temporary permit for operation, pending promulgation of the regulations by the Department of Environmental Resources (DER). The regulations were not adopted until August 2, 1971. The Authority never received a formal permit from the DER since by the time the regulations were adopted the Authority determined it would be too costly to comply with their standards. The regulations required that before refuse may be disposed in a pit, one-half of the pit must first be filled with a substance of fine soil. The Authority had already disposed of approximately 500,000 cubic yards of waste at Pocono Downs without the sub-base. In order for the Authority to receive a DER permit, all of the existing waste would have to be excavated and a suitable sub-base provided. Plaintiff contends that by violating the Pennsylvania Solid Waste Management Act (Act) the Authority materially breached the terms of the first lease.

On January 14, 1981, plaintiff and the Authority entered into a second lease whereby the Authority extended its lease on the land through December 31, 1981. The Authority agreed to comply with all state and local rules and regulations and to save harmless and indemnify Pocono Downs, its successors and assigns, from all claims arising from the Authority's operations. The Authority also recognized as a continuing obligation the fulfillment of all obligations arising out of the first lease. Lease attached to Plaintiff's Motion as Exhibit J, Document No. 63 of the Record. Plaintiff contends the Authority materially breached the terms of the second lease by continued violations of the law.

By letter of August 5, 1981, Francis J. Wormuth, Esq., attorney for the trustee of Pocono Downs notified the Authority that it was in default of the second lease and that, under the terms of the lease, the landfill should be shut down immediately until the default is cured. Letter attached to Plaintiff's Motion as Exhibit L, Document No. 63 of the Record. By Order of the DER dated October 19, 1981, the Authority was notified that it was violating the Act by operating without a permit. Order attached to Plaintiff's Motion as Exhibit M, Document No. 63 of the Record. The Authority was given sixty (60) days in which to submit a closure plan and until December 31, 1981, to cease all landfill operations. *Id.* The plaintiff refused defendants access to the property, effective January 22, 1982, as the Authority did not cease operations upon receipt of notice of default nor cure the defect. Plaintiff did, however, allow defendants to enter the property for purposes of attempting to comply with the DER Order requiring a closure plan.

The plaintiff filed a complaint dated December 23, 1982, seeking specific performance or, in the alternative, recovery of money damages for alleged violations of the lease agreement between plaintiff and the Authority. Plaintiff also seeks relief from the municipalities as he contends they are, and at all times have been, in control of the Authority. The Authority has filed cross-

claims against each Municipality for its share of the closing costs of the landfill and amounts due unpaid creditors. The Municipalities have denied liability to the Authority. The Authority alleges it has no assets to pay creditors or properly close the landfill.

On December 15, 1983, plaintiff filed a motion for partial summary judgment against the defendant East Side Landfill Authority, on the issue of liability for breach of contract. The Authority filed an opposition brief dated December 29, 1983. The Township of Plains also filed a brief in opposition to plaintiff's motion dated December 30, 1983, and the remaining defendants concurred in the Township of Plains' brief on January 17, 1984.

Plaintiff in his motion for partial summary judgment argues: (1) the record demonstrates that operating the landfill in compliance with the law was an express term of the lease which the Authority violated, as well as failure to close the landfill by Order of a state agency, thereby materially breaching the contractual obligation to the plaintiff; and (2) that plaintiff is entitled to an order of specific performance as there is a clear breach of contract and no adequate remedy at law.

DISCUSSION

■ A motion for summary judgment may be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If the moving party establishes the absence of any material factual dispute the burden then shifts to the opposing party to prove the existence of such a dispute. Under Pennsylvania law, when construing a contract, "where the words are clear and unambiguous the intent [of the parties] is to be determined only from the express language of the agreement." *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 143, 302 A.2d 347 (1973). In the case *sub judice*, the language of the first and second lease

agreements is clear and unambiguous and is, therefore, the sole expression of the parties' intent. Consequently, the lessee is liable to the lessor for any material breach of the agreement. Both the first and second lease agreements provide that the Authority must comply with all state rules and regulations. In addition, the second agreement specifically required the Authority to close the site upon personal notice in writing by lessor that he and the DER have determined the Authority to be in default of the Act or any covenant within the lease. A violation of either provision would constitute a material breach of the contract.

■ Plaintiff has submitted evidence by way of deposition testimony and reports from the DER which clearly indicate the Authority has not complied with the terms of the Act. For example, the Authority never received a formal operating permit, *see* Order of DER dated October 19, 1981, attached to Plaintiff's Motion, *supra;* and judgment entered by the Commonwealth Court dated April 11, 1983, attached to Plaintiff's Motion as Exhibit P, Document No. 63 of the Record. Nor did the Authority close the landfill site upon notice of default under the second lease. The Authority alleges that the DER assented to their operation without a formal permit. Also, they contend that the notice of default was insufficient since it did not refer to any violation of law determined by an Inspector of DER. *See* Defendant, East Side Landfill Authority, Brief in Opposition to Motion for Summary Judgment, Document No. 66 of the Record.

■ It is apparent that the Authority had been aware it was not operating the landfill in compliance with state law. The DER through Alan W. Stephens, Solid Waste Specialist, sent a Notice of Violation dated December 6, 1973 to the Authority which stated, "I would remind the Authority that the new pit is being filled illegally...." DER Notice of Violation attached to Plaintiff's Motion as Exhibit C at 3, *supra. See also* DER Notice of Violation attached to Plaintiff's Motion as Exhibit E (dated December 10, 1973), DER Letter

attached to Plaintiff's Motion as Exhibit F (dated January 21, 1974); DER Letter attached to Plaintiff's Motion as Exhibit I (dated March 7, 1977); DER Order attached to Plaintiff's Motion as Exhibit M (dated October 19, 1981). The deposition of Dr. Walter Newman, a member of the Authority, attached to Plaintiff's Motion as Exhibit B, also indicates the Authority was aware it was violating the Act. Dr. Newman stated, "it was around '73 that we were already having dialogue with D.E.R. about the fact that we were not qualified to receive a permit at that site ... they knew that we were not in compliance with the regulations, but we had no place to go ... as long as we were pursuing a site, they would continue to allow us to dump...." *Id.* at 57. "There was no way we could come in compliance to get a permit." *Id.* at 60. The continued Notice of Violations sent to the Authority by the DER as well as the subsequent prosecution for failure to comply with the Act clearly indicates the DER did not acquiesce in the Authority's violations.

■ The Authority also argues that the notice of default received from the plaintiff was insufficient under the terms of the lease agreement. The second lease provides: "Upon personal notice in writing by Lessor to Lessee, that Lessor or Lessor's representative and Inspector for D.E.R. have determined that Lessee is in default ... all landfill operations on the leased premises shall immediately cease." Second Lease at 3, *supra.* The Authority's allegation that the notice is deficient in that it is "self-serving" and "does not refer to any violation of law determined to exist by an inspector of DER," Defendants' Brief at 6, *supra,* cannot be accepted by the court. The lease merely requires notice to the lessee that there is a violation of the DER rules or regulations and that the lessor has determined this to be a breach of the lease.

Both conditions, *i.e.,* notice to lessee and a determination by DER that the lessee was in default because it was operating the landfill illegally, have obviously been satisfied.[1] There was no need for a formal certification from the DER accompanying plaintiff's notice of default.

■ The Authority's final two arguments are likewise without merit. It asserts that the plaintiff has produced no evidence that violations of the Act have not been abated. While some minor violations may have been corrected, this does not affect the Authority's breach of the agreement as it was still operating the landfill without a formal permit. Additionally, the Authority claims the plaintiff has not explained how he has been harmed by their violations of state law. This, more appropriately, is an issue going to the type and amount of damages, not liability under the contract.

Since the court has determined that there has been a material breach of the lease agreement, the plaintiff suggests that an order of specific performance is appropriate. While partial summary judgment will be granted on the issue of liability, the court will await further development of the record concerning, *inter alia,* the cost of closing the landfill, before considering what relief is appropriate.

---

**1.** The construction and effect of a written agreement not dependent upon extrinsic facts is a question of law to be decided by the court. "[T]he general rule has been that the interpretation of a writing is for the court and such interpretation has largely been withdrawn from the jury." *Capital Blue Cross v. Paid Prescriptions, Inc.,* 496 F.Supp. 223, 225 (M.D.Pa.1980). *See also Goldinger v. Boron Oil Co.,* 375 F.Supp. 400, 414 (W.D.Pa.1974), *aff'd,* 511 F.2d 1393, *cert. denied,* 423 U.S. 834, 96 S.Ct. 59, 46 L.Ed.2d 52 (1975).