

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-10-1995

# Amer Flint v Beaumont Glass

Precedential or Non-Precedential:

Docket 94-3307

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Amer Flint v Beaumont Glass" (1995). *1995 Decisions.* Paper 216.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/216

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

_____

No. 94-3307

_____

AMERICAN FLINT GLASS WORKERS UNION,
AFL-CIO; MICHAEL SINE; ANDY J. HATFIELD,
Appellants

v.

BEAUMONT GLASS COMPANY; BEAUMONT
COMPANY PENSION PLAN FOR HOURLY EMPLOYEES,
Appellees

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 93-cv-01511)

_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 1995

PRESENT:  HUTCHINSON, NYGAARD and GARTH, <u>Circuit Judges</u>

(Filed August 10, 1995)

_____

Marianne Oliver, Esquire
Gilardi & Cooper, P.A.
808 Grant Building
Pittsburgh, PA    15219

        and

Edward J. Kabala, Esquire
Kabala & Geeseman
The Waterfront
200 First Avenue
Pittsburgh, PA    15222

        and

Alfred S. Pelaez, Esquire

1

Duquesne University School of Law
900 Locust Street
Pittsburgh, PA      15282
                    Attorneys for Appellants

Kathleen A. Gallagher, Esquire
Pittsburgh Food & Beverage Company, Inc.
1200 Frick Building
437 Grant Street
Pittsburgh, PA    15219
              Attorney for Appellees

———————————

OPINION OF THE COURT
———————————

HUTCHINSON, Circuit Judge.


        Appellants, American Flint Glass Workers Union, AFL-CIO, Michael Sine, and Andy J. Hatfield (collectively the "Union"), appeal an order of the United States District Court for the Western District of Pennsylvania denying their motion for summary judgment and, instead, sua sponte granting summary judgment to the appellees, the Beaumont Glass Company (the "Company") and the Beaumont Company Pension Plan for Hourly Employees (the "Plan").  This case arose after the Company unilaterally adopted a resolution to terminate the Plan, believing that termination would leave a surplus for distribution.  The Union objected to the Company's unilateral decision to terminate and filed a charge with the National Labor Relations Board (the "NLRB").  Subsequently the Company and the Union agreed in writing to permit the termination process to go forward and the Union withdrew the charge.

        After the Company and the Union had so agreed, the Company learned that there would be no surplus on termination, that the Plan was underfunded and that it would have to

3

contribute approximately $300,000 to the Plan before the Internal Revenue Service (the "IRS") would approve termination. The Company then decided not to terminate, and the Union filed this action alleging that the agreement to proceed with termination precluded the Company from canceling or withdrawing its decision to terminate because of unanticipated cost. Rather, the Union contends that the Company must provide the additional funds needed for IRS approval of the Plan's termination. It advances, as alternative theories of recovery, the fiduciary responsibilities of the Employee Retirement Income Security Act ("ERISA") and the common law of contracts.

We reject the Union's theory that the Company had a fiduciary duty to provide the funds necessary to terminate the Plan. On the Union's contract theory, however, we conclude that genuine disputed issues of material fact exist. Accordingly, we will reverse the district court's <u>sua</u> <u>sponte</u> order granting summary judgment to the Company and remand this case for further proceedings consistent with this opinion.


## I. Statement of Facts

On July 2, 1992, the Company's board of directors adopted a resolution to terminate the Plan.[0] It also amended the

---

[0]The resolution provided:

> NOW THEREFORE BE IT RESOLVED, that the attached Amendment to the Plan which, among other things, ceases any future Retirement Benefit accruals under the Plan effective August 31, 1992, be, and the same hereby is, adopted;

Plan to provide for an August 31, 1992 termination date.[0]  The

---

> FURTHER RESOLVED that the Plan shall be
> terminated as of August 31, 1992;
>
> FURTHER RESOLVED that all liabilities of the
> Plan to participants, beneficiaries and
> alternate payees be discharged through the
> purchase of annuity contracts, or the payment
> of lump sum distributions to electing
> participants, for all persons other than
> those who may receive lump sum cash-outs of
> $3,500 or less; . . .
>
> FURTHER RESOLVED, that [corporate officers]
> . . . file with the appropriate federal
> agencies such notifications and ruling
> requests as are customary or desirable under
> the circumstances.

Appendix ("App.") at 22.
[0]The following amendments were adopted by the board of directors:

> 1.  The Pension Fund and the Trustee,
> Article VI is amended by the addition of the
> following paragraph at the end thereof:
>
>> Notwithstanding any other provision
>> of this Plan, contributions under
>> the Plan shall cease as of
>> August 31, 1992.
>
> 2.  Eligibility Service and Credited Service,
> Article II, is amended by the addition of the
> following paragraph at the end thereof:
>
>> Notwithstanding any other provision
>> of this Plan, Eligibility Service
>> and Credited Service shall cease to
>> accrue, for any participant, no
>> later than August 31, 1992.
>
> 3.  Retirement Benefits, Article VI, is
> amended by the addition of the following
> paragraph at the end thereof:
>
>> Notwithstanding any other provision
>> in the Plan, Retirement Benefits

5

Plan, as so amended, remains in effect.  On July 2, 1992, the Company delivered notice of its intent to terminate the Plan on August 31, 1992 to each participant, beneficiary, alternate payee, and the Union pursuant to 29 U.S.C.A. § 1341(a)(2) (West 1985).  Based upon its own consultants' reports, the Company then believed that the Plan's assets exceeded the present value of its liabilities.

About a week after receiving notice of the Company's intent to terminate the Plan, the Union filed an unfair labor practice charge with the NLRB challenging the Company's unilateral decision to terminate the Plan.  The NLRB issued a complaint and scheduled a hearing before an administrative law judge.  Before the hearing, the Company and the Union met and entered into an agreement meant to resolve their dispute.  In exchange for the Union's withdrawal of the NLRB charge, the Company agreed to pay the Plan's participants a lump-sum cash payment upon "receipt of approval of the Plan termination by the IRS."[0]  The parties refer to this agreement as the "Settlement Agreement," and so will we.

---

     shall cease to accrue, for any
     participant, no later than
     August 31, 1992.

App. at 21.
[0]In this respect, the Settlement Agreement states:

    Upon receipt of the approval of the plan
   termination by the Internal Revenue Service,
   the Company will arrange for the distribution
   of the actuarial equivalent value of the
   accrued benefits in cash for each plan
   participant entitled to benefits under the

6

The Company's consultants began preparing the documents necessary for regulatory permission to terminate the Plan. In doing so, they discovered that the Plan's assets were insufficient to satisfy its liabilities on a termination basis, even though it was adequately funded on an on-going basis. Instead of the expected surplus, the Company now faced a deficit of approximately $300,000 if it proceeded to terminate the Plan.[0] If termination was abandoned, however, the Plan would remain adequately funded, so long as the Company continued its customary required contributions. Knowing these facts, the Company notified the Union that the assets of the Plan were insufficient to permit termination and that it no longer intended to terminate the Plan. The Company also refused to submit a termination plan

> terminating plan, unless such participant
> elects to take their benefits in the form of
> a monthly benefit.

App. at 24.

[0]Apparently, pension funding on a termination basis is subject to actuarial assumptions that differ from those used to calculate funding on an on-going basis. Accordingly, a pension plan that is adequately funded on an on-going basis can be substantially underfunded on a termination basis. The consultants explained the situation with regards to the present plan as follows:

> To summarize, the Plan has been caught in
> something of a squeeze between adverse
> changes in the annuity market place and
> adverse asset growth at the same time. The
> result is that the Plan's assets, which once
> comfortably covered all termination
> liabilities, no longer meet that need. The
> assets are, however, certainly large enough
> to meet the current annual payout
> requirements for retired employees. . . .

App. at 201.

7

to the IRS, contending that the Settlement Agreement imposes on it no legal obligation to terminate.

The Union then filed this action. It alleged that the Company breached the Settlement Agreement and ERISA by failing to terminate the Plan and pay its participants the lump sum benefits that they would be entitled to receive upon termination. When the facts recited above went undisputed, the Union moved for summary judgment, contending that the Settlement Agreement unambiguously required the Company to terminate the Plan and pay the lump sums due on termination.

On May 13, 1994, the district court held that the Company and the Plan were not obligated to terminate by contract, fiduciary duty, or any other legal principle. It reasoned that ERISA precluded termination of an underfunded plan and therefore "submission of the Plan termination to the IRS for approval would have been an exercise in futility." American Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co., No. 93-1511, slip op. at 6 (W.D. Pa. May 13, 1994). It also concluded that the Settlement Agreement did not obligate the Company to make the payment necessary to fund termination. The district court not only denied the Union's motion for summary judgment but, on its own motion, granted summary judgment to the Company. The Union filed this timely appeal.


## II.  Jurisdiction & Standard of Review

The district court had subject matter jurisdiction over this case under 28 U.S.C.A. § 1331 (West 1995). We have

8

appellate jurisdiction over the district court's final decision
under 28 U.S.C.A. § 1291 (West 1993).

In this case, the Company did not move for summary
judgment. The district court, on its own motion, granted summary
judgment, stating:

> Although Fed. R. Civ. P. 56 does not
> explicitly authorize this Court to grant
> summary judgment to a non-moving party, the
> Court concludes that 'where one party has
> invoked the power of the court to render a
> summary judgment against [an] adversary, it
> is reasonable that this invocation gives the
> court power to render summary judgment for
> [the] adversary if it is clear that the case
> warrants that result.' 6 Moore's Federal
> Practice ¶ 56.12 (1994).

American Flint, No. 93-1511, slip op. at 9. Neither party
challenges the district court's decision to act sua sponte.[0] We
will therefore review the merits of the district court's order
granting summary judgment to the Company using the customary
standard of plenary review over district court orders granting
summary judgment. Bixler v. Central Pa. Teamsters Health-Welfare
Fund, 12 F.3d 1292, 1297 (3d Cir. 1993); Wheeler v. Towanda Area
School Dist., 950 F.2d 128, 129 (3d Cir. 1991). All reasonable

---

[0]Nevertheless, it is appropriate to remind the district court:
"[A] district court may not grant summary judgment sua sponte
unless the court gives notice and an opportunity to oppose
summary judgment." Otis Elevator Co. v. George Washington Hotel
Corp., 27 F.3d 903, 910 (3d Cir. 1994) (citing, among other
cases, Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069-70
(3d Cir. 1990), Davis Elliott International, Inc. v. Pan American
Container Corp., 705 F.2d 705, 707-08 (3d Cir. 1983). While
these rights can be waived, orders granting summary judgment sua
sponte endanger important rights and, unless waived as here, are
likely to result in judicial inefficiency and deprivation to the
rights of one of the parties.

9

inferences and any ambiguities should be drawn in favor of the party against whom judgment is sought.  Bixler, 12 F.3d at 1297-98.  Moreover, summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Id. at 1297.

### III.  Discussion

#### A.  ERISA

The Union claims that the Company breached its fiduciary duties under ERISA by failing to terminate the Plan. Conceding that the Company had no initial duty to terminate, the Union claims that once the Company amended the Plan to include a termination date it had to administer the Plan in accordance with that amendment.  Thus, the Union concludes that the Company breached its fiduciary duty when it failed to provide the funding necessary to terminate the Plan and thereafter distribute the Plan's assets to the employees.  On this point we, like the district court, disagree with the Union.

The Plan is a single-employer defined benefit pension plan subject to ERISA, and the Company serves as a fiduciary under ERISA with regard to certain specified plan related decisions.  Although "ERISA creates a fiduciary duty on the part of an employer administering a plan," the employer does not always act in a fiduciary capacity.  Delgrosso v. Spang and Co., 769 F.2d 928, 934 (3d Cir. 1985), cert. denied, 476 U.S. 1140 (1986).  Under ERISA, "when employers themselves serve as plan administrators, they assume fiduciary status only when and to the

10

extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1158 (3d Cir. 1990) (quotations omitted). An employer's decision to amend a plan is not the subject of ERISA's fiduciary duties. Id. at 1161 ("Virtually every circuit has rejected the proposition that ERISA's fiduciary duties attach to an employer's decision whether or not to amend an employee benefit plan.") (collecting cases); see also McGath v. Auto-Body North Shore, Inc., 7 F.3d 665, 670 (7th Cir. 1993) (quoting Hozier).

A decision to terminate a plan is "unconstrained by the fiduciary duties that ERISA imposes on plan administration." Hozier, 908 F.2d at 1162; see also Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 133 (3d Cir.), cert. denied, 114 S. Ct. 622 (1993). Payonk v. HMW Industries, Inc., 883 F.2d 221, 229 (3d Cir. 1989). We will, however, assume, once a termination decision is reached, that ERISA's fiduciary duties control the termination procedures. See District 65, UAW v. Harper & Row Publishers, Inc., 670 F. Supp. 550, 556-57 (S.D.N.Y. 1987) (holding that post-termination decisions are subject to ERISA's fiduciary duties when they involve discretionary decisions).

Nevertheless, we believe that the Union's fiduciary claim still fails in this case. The duty here in question is no more than the duty to administer an ERISA-covered plan in accordance with the plan's terms. See 29 U.S.C.A. § 1104 (West 1985 and Supp. 1995); Spang, 769 F.2d at 935-36. ERISA section 1104 states in relevant part:

11

> [A] fiduciary shall discharge his duties with
> respect to a plan solely in the interest of
> the participants and beneficiaries and--
> * * *
> (D) in accordance with the documents and
> instruments governing the plan <u>insofar as
> such documents and instruments are consistent
> with the provisions of this subchapter and
> subchapter III of this chapter</u>.

29 U.S.C.A. § 1104(a)(1)(D) (West Supp. 1995) (emphasis added). The Union's argument ignores the highlighted limiting clause in this quote from the statute, which limits the Company's fiduciary duty in effecting termination to compliance with ERISA's provisions concerning termination. As the United States Court of Appeals for the Fourth Circuit recently held, "strict compliance with the statute is the sole means by which a pension plan subject to the provisions of ERISA may be terminated." <u>Phillips v. Bebber</u>, 914 F.2d 31, 34 (4th Cir. 1990); <u>see</u> <u>also</u> 29 U.S.C.A. § 1341(a)(1) (West Supp. 1995) ("Exclusive means of plan termination").

With respect to termination, ERISA provides, ". . . a single-employer plan may be terminated only in a standard termination under subsection (b) of this section or a distress termination under subsection (c) of this section." 29 U.S.C.A. § 1341(a)(1). The termination at issue in this case can proceed only as a standard termination. In a standard termination, ERISA requires, in relevant part, that:

> the plan administrator shall send a notice to
> the [Pension Guaranty Corporation] setting
> forth--
> (i) certification by an enrolled actuary--

12

> (I) of the projected amount of the assets of the plan (as of the proposed date of the final distribution of assets),
> (II) of the actuarial present value (as of such date) of the benefit liabilities (determined as of the proposed termination date) under the plan, and
> (III) that the plan is projected to be sufficient (as of such proposed date of final distribution) for such benefit liabilities.

29 U.S.C.A. § 1341(b)(2) (West Supp. 1995) ("Termination procedure"). Here, the actuaries were unable to provide the certification required for termination because of insufficient assets. Thus, the Company could not terminate the Plan as the amendment provided in accord with ERISA unless it had some legal obligation to provide all the funds necessary to meet ERISA's full funding requirement. We perceive no such obligation in the statute itself. Indeed the Union's reasoning on this point seems circular.[0]

The Pension Guaranty Corporation's regulations on terminations provide:
> [F]ailure to distribute assets . . . within the 180-day distribution period . . . shall

---

[0]The Union's reliance on Kinek v. Paramount Communications, 22 F.3d 503 (2d Cir. 1994), and Pension Benefit Guaranty Corp. v. Artra, Group, Inc., 972 F.2d 771, 772 (7th Cir. 1992), is misplaced. In Kinek, the court addressed the contractual responsibilities of an employer that terminated a plan. The contract in question specifically stated that "'the Employer will fully fund'" the plan upon termination. Kinek, 22 F.3d at 506. Although this case may prove relevant on remand to the Union's contract claim, it has no effect on its claim for breach of fiduciary duty. In Artra, the court held an employer liable for terminating an underfunded plan. Artra, 972 F.2d at 771. Furthermore, Artra addressed the company's statutory liability under ERISA's termination provision, 29 U.S.C.A. § 1362, and not its fiduciary duties.

13

> nullify the termination. <u>All actions taken to effect the plan's termination shall be null and void, and the plan shall be an ongoing plan.</u>  In this event, the plan administrator shall notify the affected parties in writing . . . that the plan is not going to terminate or, if applicable, that the termination was invalid but a new notice of intent to terminate is being issued.

29 C.F.R. § 2617.28 (emphasis added).  As stated above, the Company properly notified the affected parties when it determined that the Plan's asserts were insufficient to permit the termination process to go forward.  Accordingly, we conclude that the amendment is null and void and the Company has no continuing fiduciary duty to act in accordance with it.

The district court's grant of summary judgment in favor of the Company on the Union's breach of fiduciary duty claim will be affirmed.


B.  Contract

We must still consider, however, what the Settlement Agreement obligates the Company to do.  The Union argues that the Company promised "to terminate the Plan and, by clear implication and by law, to provide whatever funding termination required." Brief of Appellant at 8.  The Company responds that ERISA precludes it from terminating the Plan at its current funding level and nothing in the Settlement Agreement obligates it to furnish the additional funding needed to terminate.

The Settlement Agreement, as an agreement between an employer and a union, is a labor agreement, but its

14

interpretation is nevertheless governed by general principles of contract law.  See 29 U.S.C.A. § 185 (West 1995); Jersey Cent. Power & Light Co. v. International Brotherhood of Electrical Workers, 508 F.2d 687, 703 n.45 (3d Cir. 1975) (labor agreements "are to be interpreted according to principles of general contract law inasmuch as Congress has not adopted a different standard by which the . . . agreement is to be interpreted."); see also Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. 448 (1957).

The parties frame their dispute around the Settlement Agreement's provision for distributions to Plan participants upon the IRS's approval of termination.  The Company contends that the IRS's approval is a condition precedent to termination that it is unable to satisfy.  The Union argues that the lack of the IRS's approval is immaterial because it was the Company's failure to submit a termination Plan to the IRS that prevented the occurrence of the condition.  See Davidson & Jones Dev. Co. v. Elmore Dev. Co., 921 F.2d 1343, 1351 (6th Cir. 1991); Vanadium Corp. v. Fidelity & Deposit Co., 159 F.2d 105, 108 (2d Cir. 1947); Cauff, Lippman & Co. v. Apogee Finance Group, Inc., 807 F. Supp. 1007, 1024 (S.D.N.Y. 1992).

Both parties seem to miss the point when they cast their arguments primarily in terms of conditions precedent.[0]  The issue, as we see it, is whether the Settlement Agreement imposes

---

[0]In doing so, they run the risk of confusing the condition precedent that the IRS imposes on termination with the provisions of the contract that the Company believes make pre-existing full funding a condition precedent to its obligation to terminate.

a duty on the Company to provide the funding needed to obtain IRS approval of the proposed termination.  In this respect, the district court correctly defined the issue, but incorrectly resolved it.  It held:  "[The Union's] breach of contract theory founders because [it] fail[s] to establish that [the Company and the Plan] are, or ever were, under a contractual duty to [the Union] to put sufficient additional assets into the fund to render the fund susceptible of lawful voluntary termination."  American Flint, No. 93-1511, slip op. at 6.  We hold that the district court erred in resolving this issue as a matter of law.

"'[I]n order for us to affirm the district court with respect to summary judgment, we must determine that the contract is so clear that it can be read only one way.'"  Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987) (quoting Landtect Corp. v. State Mut. Life Assur. Co., 605 F.2d 75, 79 (3d Cir. 1979)).  Thus, if the union "'presents us with a reasonable reading of the contract which varies from that adopted by the district court, then a question of fact as to the meaning of the contract exists which can only be resolved at trial.'"  Id.

In determining the meaning of the contract, the "initial resort should be to the 'four corners' of the agreement itself."  Washington Hospital v. White, 889 F.2d 1294, 1300 (3d Cir. 1989), cert. denied, 498 U.S. 850 (1990).  "To be unambiguous, an agreement must be reasonably capable of only one construction."  Id. at 1301 (citations omitted).  Ambiguity is a pure question of law for the court.  World-Wide Rights Ltd. Partnership v. Combe Inc., 955 F.2d 242, 245 (4th Cir. 1992); see

16

also International Brotherhood of Boilermakers, etc. v. Local Lodge D504, 866 F.2d 641 (3d Cir.), cert. denied, 493 U.S. 812 (1989); Tigg, 822 F.2d at 362.

In deciding whether a contract is ambiguous, a court does not just ask whether the language is clear; instead it "hear[s] the proffer of the parties and determine[s] if there are objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." Teamster Industrial Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993) (quoting Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1284 (3d Cir. 1991)) (internal brackets and quotation marks omitted). As we have stated:

> An ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning through indefiniteness of expression, or having a double meaning. . . . Before it can be said that no ambiguity exists, it must be concluded that the questioned words or language are capable of [only] one interpretation.

Landtect Corp. v. State Mut. Life Assurance, 605 F.2d 75, 80 (3d Cir. 1979) (internal quotation marks omitted) (quoting Gerhart v. Henry Disston & Sons, 290 F.2d 778, 784 (3d Cir. 1961)).

If a contract can reasonably be interpreted in two different ways, neither contracting party is entitled to summary judgment. Here the parties offer two reasonable interpretations: (1) the contract requires the Company to terminate the Plan only if its current funds enable it to do so, or (2) the contract

17

requires the Company to take all necessary steps (including funding) to effectuate the proposed termination. In this respect, the Settlement Agreement is ambiguous and extrinsic evidence is necessary to ascertain the intent of the parties. See World-Wide Rights, 955 F.2d at 242; Rolls-Royce, 989 F.2d at 135; Tigg, 822 F.2d at 363; Thompson-Starrett Int'l, Inc. v. Tropic Plumbing, Inc., 457 F.2d 1349, 1352 (3d Cir. 1972).

Accordingly, we hold that a material issue of fact remains in dispute concerning the parties' intent to impose on the Company a duty to provide the funding needed to secure IRS approval of termination.[0] This question cannot be resolved as a matter of law on the record now before us, and therefore further proceedings will be needed in the district court.

## IV. Conclusion

For the above reasons, we will reverse the district court's grant of summary judgment in favor of the Company and remand the case for further proceedings consistent with this opinion.

---

[0] This issue of fact concerning the intent of the contracting parties should be distinguished from the legal issue of construing the meaning of a contract's terms from their text. See White, 889 F.2d at 1302.