## TIGG CORPORATION

v.

## DOW CORNING CORPORATION, Appellant.

### No. 86–3480.

United States Court of Appeals, Third Circuit.

Argued Feb. 18, 1987.

Decided June 15, 1987.

---

Erwin N. Griswold (argued), Michael A. Nims, Charles M. Trippe, Jr., Jones, Day, Revis & Pogue, Cleveland, Ohio, Edward G. O'Connor, Mark A. Willard, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for appellant.

R. Dell Ziegler (argued), Buchanan Ingersoll, Professional Corp., Pittsburgh, Pa., for appellee.

Before SLOVITER and MANSMANN, Circuit Judges, and SCIRICA, District Judge.[*]

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this diversity action for contract damages under Michigan law, we consider the certified question whether the district court was correct in applying the parol evidence rule of the Michigan Uniform Commercial Code to exclude from the court's consideration extrinsic evidence offered to support an alternative interpretation of a contract which, from the linguistic perspective of the court, appears to be facially unambiguous. We find that the district court erred in refusing to consider all proffered evi-

[*] Honorable Anthony J. Scirica of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

dence when determining whether, as a matter of law, the contract was reasonably susceptible of more than one interpretation. Therefore we will reverse the entry of partial summary judgment for the plaintiff.

## I.

Plaintiff Tigg Corporation ("Tigg") is a Pennsylvania corporation which manufactures filtration systems intended for industrial and commercial liquids. Defendant Dow Corning Corporation ("Dow Corning") is a Michigan corporation engaged in, among other things, the manufacture of silicone fluid used in electrical transformers.[1]

In late 1981 representatives of Tigg and Dow Corning met in Pittsburgh, Pennsylvania, to discuss the possibility of a joint development effort directed toward a system for filtering polychlorinated biphenyls ("PCBs") from silicone fluids used to cool electrical transformers. This technology was eventually designated as the "RetroSil" system.

On February 9, 1982 Tigg and Dow Corning entered into a preliminary agreement for the joint development effort which contemplated that Tigg would supply two components for use in the RetroSil system, absorbers and control stations. On June 11, 1982 Tigg and Dow Corning entered into the written agreements that are the subject of the present dispute, the "Absorber Agreement" and the "Control Station Agreement." The contracts provided for expected quantity requirements as well as annual minimums. Dow Corning failed to purchase the specified minimums for 1983 and 1984, and Tigg filed this suit.

The contracts were drafted by Dow Corning's attorney and the disputed provisions of the Control Stations agreement[2] read as follows:

1.2  *Agreement*

DOW CORNING shall purchase from TIGG, and TIGG shall sell to DOW CORNING, the Control Stations specified in Paragraph 1.3 in the quantities specified in Paragraph 1.4.

1. The parties do not dispute the historical facts which we set forth here.

1.3  *Product*

RetroSil™ Control produced exclusively for DOW CORNING in accordance with the DOW CORNING specifications attached as Exhibit 1.

DOW CORNING may revise its specifications at any time.

1.4  *Quantity*

DOW CORNING agrees to purchase annually the minimum quantity of RetroSil™ Control Stations to specifications set out in Exhibit 1, indicated in the table below.

RetroSil™ Control Stations

| Contract Year | Minimum | Expected |
|---|---|---|
| 1982 | | |
| 3rd Quarter | 66 | 165 |
| 4th Quarter | 66 | 248 |
| Total | 132 | 413 |
| 1983 | 578 | 1115 |
| 1984 | 825 | 2228 |

1985 and 1986 To be provided by July 1, 1984.

1.10  *Remedy for Failure to Supply*

In the event that TIGG is unable to supply at least fifty percent of the current annual minimum quantity during any calendar quarter, DOW CORNING may make up the deficiency by purchasing from another source and the quantity so purchased will be deducted from DOW CORNING'S annual minimum purchase requirement.

2.5  *Entire Amount*

The terms and conditions herein represent the entire Agreement between the Parties with respect to the sales of goods indicated above and may be modified only by a writing signed by both Parties.

Each Agreement provided that DOW CORNING'S "minimum purchase obligations" would be reduced for any period when TIGG's equipment failed to "perform properly for the removal of PCBs from transformer fluid" and the parties were attempting to rectify such a deficiency.

Each Agreement also provided that:

The parties shall meet annually in November to adjust quarterly forecasts for the next contract year and to adjust annual minimums, if necessary.

## Tigg Exhibit A.

The theory of Tigg's case is that the parties intended that Dow Corning be obligated to purchase at least the annual minimums specified by the contracts. Tigg ar-

2. Identical language, except for the number of Adsorber Units, appears in the Adsorber Unit contract.

gues that the contract minimums can be reduced or increased only by agreement and that, as required by the merger clause in each contract, any agreed-upon change must be in writing and signed by both parties.

In defense, Dow Corning contends that the contracts are only "requirements contracts" entailing no obligation on Dow Corning's part to purchase the minimum quantities identified in the contracts. Dow Corning further contends that the agreements on their face support such an interpretation by providing for necessary revision of quantity forecasts and annual adjustments of the minimum quantities. The only purpose of the specified minimums, according to Dow Corning, was to establish the conditions under which the parties were to deal with each other on an exclusive basis. Dow Corning argues that the contracts provided for firm orders by Dow Corning on a quarterly basis only, showing that the minimums were merely forecasts of expected sales by Dow Corning to others.

Dow Corning proffered extrinsic evidence in support of its interpretation, including letters exchanged during negotiations which could be interpreted as supporting Dow Corning's assertion that the parties, throughout their negotiations, contemplated that the requirements of Dow Corning would govern the annual minimums. *See* Deposition Exhibits Filed April 12, 1985, *reprinted in* appendix at 749–59a. Dow Corning's evidence also shows that after the 1982 meeting required by the agreements, the minimum quantity for control stations was in fact reduced. *See* Deposition of Robert Sanford at 42–45, *reprinted in* Appendix at 199a–1 to 4. We need not review each and every piece of evidence proffered by Dow Corning because, as will later be apparent, these exhibits are sufficient evidence of a contrary construction to withstand a motion for summary judgment.

Upon motion by the plaintiff Tigg, the district court entered partial summary judgment in its favor and against Dow Corning on the issue of the parties' intent.

Although other issues, including Dow Corning's defense of major technical failure remain to be determined, the district court on June 23, 1986, amended its order of partial summary judgment to certify the contract interpretation issue.

## II.

■ In reviewing a grant of summary judgment we must apply the same standard that should have been applied by the district court. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). We must reverse unless it is plain that no genuine issue as to a material fact remains for trial and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R. Civ.P. 56.

The standard for summary judgment mirrors the standard for a directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). As with a Rule 50 directed verdict, a motion for summary judgment may be granted only if, as a matter of law, viewing all the evidence which has been tendered and should have been admitted in the light most favorable to the party opposing the motion, no jury could decide in that party's favor. *Indian Coffee Corp. v. Procter & Gamble Co.*, 752 F.2d 891, 894 (3d Cir.), *cert. denied*, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985). In reviewing a summary judgment on an issue of contract interpretation we have said:

> [I]n order for us to affirm the district court with respect to summary judgment, we must determine that the contract is so clear that it can be read only one way. If the non-moving party presents us with a reasonable reading of the contract which varies from that adopted by the district court, then a question of fact as to the meaning of the contract exists which can only be resolved at trial.

*Landtect Corp. v. State Mut. Life Assur. Co.*, 605 F.2d 75, 79 (3d Cir.1979).

The dispute before us now centers on the determination of what constitutes the agreement of the parties regarding adjustments to the annual minimums expressed

in the contracts. The burden at trial is on the plaintiff, Tigg, to establish the terms of the contract upon which it bases its claim. *Zukoski v. Baltimore & Ohio R.R. Co.,* 315 F.2d 622 (3d Cir.), *cert. denied,* 375 U.S. 856, 84 S.Ct. 118, 11 L.Ed.2d 83 (1963). Therefore it is Tigg's burden, as movant for summary judgment, to produce credible evidence that would entitle it to a directed verdict if not controverted at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting), *citing* 10A C. Wright, A. Miller & M. Kane § 2727 (2d ed. 1983). "Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery." *Id.* However, the ultimate burden of persuasion always remains with the moving party. *Id.*

Tigg attempted to meet its burden of production by showing that each contract was, on its face, susceptible of only the interpretation urged by Tigg. Tigg then attempted to meet its ultimate burden of persuasion by arguing that Dow Corning's evidence in support of an alternate interpretation would be inadmissible.

The agreements provide that they are to be governed and construed in accordance with the law of Michigan and the district court held that, under the Michigan parol evidence rule, extrinsic evidence of the party's intent and course of conduct was not admissible to interpret the agreements. The district court determined that on their face the agreements could only be construed in one way, *i.e.,* to impose an unconditional obligation upon Dow Corning to purchase the stated minimums. Therefore the district court refused to consider extrinsic evidence on the question of contract interpretation.

Tigg argues on appeal that the district court correctly determined that the contracts are facially unambiguous and therefore correctly refused to consider extrinsic evidence of an alternate meaning. Dow Corning argues that the plain language of the agreement supports its interpretation and further that the district court should have considered extrinsic evidence regardless of whether a facial ambiguity existed.

### III.

We must consider whether, in rejecting Dow Corning's proffered evidence, the district court correctly relied upon the Michigan Parol Evidence Rule, specifically § 2–202 of the Uniform Commercial Code.[3] The parol evidence rule prohibits consideration by the factfinder of extrinsic evidence offered to contradict the terms of a final written agreement. No parol evidence that is offered can be said to *contradict* a writing until, by process of interpretation, it is determined what the writing means. *Sunbury Textile Mills Inc. v. C.I.R.,* 585 F.2d 1190, 1194–95 (3d Cir.1978) (emphasis added). Therefore, the process of contract interpretation must take place before application of rules that exclude evidence.

■ The process of interpreting a document is potentially a two-step process with the court and factfinder playing defined roles. If a contract is ambiguous, its intended meaning is determined as a question of fact. *City of Detroit v. Porath,* 271 Mich. 42, 260 N.W. 114 (1935); *S.C. Gray, Inc. v. Ford Motor Co.,* 92 Mich.App. 789, 286 N.W.2d 34 (1979). Whether a contract is ambiguous is a question of law. *Id.* A contract is ambiguous if it is susceptible of more than one meaning. *Mellon Bank v. Aetna,* 619 F.2d 1001, 1011 (3d Cir.1980). It is the function of the court to make the preliminary determination, out of hearing

---

**3.** Mich.Comp.Laws Ann. § 440.2202, Final Written Expression: Parol or Extrinsic Evidence: Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contem-

poraneous oral agreement but may be explained or supplemented
(a) by course of dealing or usage of trade (Section 1205) or by course of performance (Section 2208); and
(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

of the factfinder, as to whether an ambiguity *may* exist. *Id.; see also Cooper Laboratories v. International Surplus Lines,* 802 F.2d 667, 671 (3d Cir.1986) ("federal practice allocating the functions of court and jury is controlling.").

This preliminary inquiry to be made by the court in the process of contract interpretation is the same as the role of the court in ruling on a summary judgment motion on a question of contract interpretation under Michigan law. The availability of summary judgment turns on whether a proper jury question is presented. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at ——, 106 S.Ct. at 2510. The decision whether an ambiguity may exist is the same as the decision whether a jury question is presented as to the meaning of the contract. When ruling on a summary judgment motion, the court is being asked to rule on whether, as a matter of law, the contract is susceptible of only one interpretation.

The court must apply the law of contract interpretation to determine whether the words of the contract may reasonably admit of different interpretations as to its finality or its intended meaning. *Sunbury,* 585 F.2d at 1194–95. Where a contract is disputed, Michigan law requires an examination into the circumstances surrounding a contract even where no ambiguity as to finality or intended meaning is apparent on the face of the document. *Sawyer v. Arum,* 690 F.2d 590 (6th Cir.1982); *NAG Enterprises, Inc. v. All State Industries, et al.,* 407 Mich. 407, 285 N.W.2d 770 (1979).

■ The contract of the parties is not to be found in its express terms alone but includes their bargain in fact as found in their language or by implication from other circumstances. *See* Mich.Comp.Laws Ann. § 440–1201(3). A finding that the language admits of more than one interpretation is not a prerequisite to the admission of extrinsic evidence relating to usage of trade, course of dealing or course of performance. Comment 1(c) to Mich.Comp.

Laws Ann. § 440–2202. The express terms of the agreement and any course of performance, as well as course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other. Mich.Comp.Laws Ann. § 440–2208(2).

■ Evidence other than that listed in § 440–2202(a) may also be offered to supplement or explain the terms of a written contract.[4] The only difference is that, unlike trade usage, course of dealing and course of performance, there is no presumption that "other evidence" is consistent with the writing. Where it is not consistent, the proffered evidence does not explain or supplement. It contradicts the writing and may not be considered by the factfinder.

■ In sum, in considering a motion for summary judgment on an issue of contract interpretation under Michigan law, the court must examine all the proffered evidence. The judge must consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning. *Mellon Bank v. Aetna,* 619 F.2d at 1011. Any evidence which is offered to interpret an existing term, and which is consistent with the express words of the contract, may demonstrate the existence of a genuine issue for trial. Any evidence which cannot be read as consistent with the express terms of the contract is simply irrelevant because of the principle that a contract will not be given an interpretation that is in conflict with its express language. If, after hearing the proffer of the parties, the court determines that the words of the contract *may* reasonably admit of different meanings, a question exists which may be resolved only by the factfinder. *Id.* Evidence in support of both interpretations may be introduced at trial and its credibility left to the factfinder.

## IV.

■ Applying the foregoing to the facts of this case, we find that the district court

---

**4.** Evidence of other *term* is admissible only if the court finds that the writing was not integrated or the term was not such that, if agreed upon, it would certainly have been included in the writing. Comment 3 to Mich.Comp.Laws Ann. § 440–2202.

erred in perfunctorily refusing to consider evidence proffered by Dow Corning in support of its interpretation. The district court held that the contract could only be interpreted as obligating Dow Corning to purchase the annual minimum quantities of Adsorber Units and Control Stations specified in the written documents. Dow Corning argues that the plain language of the contracts shows that the parties did not intend that the specified quantities constitute a "final expression" as to the annual minimums.

Dow Corning argues that the language of the agreements is consistent with its interpretation that the parties intended that contract minimums would be adjusted annually in accordance with Dow Corning's requirements. Dow relies on the following language to support its interpretation. In the statements of purpose the contracts provide: "The parties recognize that this is a new product and that it may be necessary to revise product specifications and forecasts." Paragraph 1.4 of each agreement provides: "The parties shall meet annually in November to adjust quarterly forecasts for the next contract year and to adjust annual minimums, if necessary." The district court acknowledged this language, but held that its presence did not help Dow Corning's position because all contract changes were required to be accomplished by formal amendment.

Dow Corning's interpretation assumes that, because the parties intended a requirements contract, the parties also intended the adjustment of annual minimums to be tied to the adjustment of the forecasts. Dow's interpretation is that adjustments to the minimums are "necessary" to correspond with adjustments to the forecasts. Thus changes to the minimums would not be changes to the contract itself and would not require a writing because the final agreement mandated that such changes were to be made. We find nothing in the language of the agreements which is inconsistent with this interpretation. Therefore the factfinder should be permitted to consider extrinsic evidence in support of Dow Corning's contention that the parties intended a requirements contract.

Tigg has met its initial burden of production on summary judgment by proffering contracts containing language consistent with Tiggs' interpretation that firm minimums were intended. Dow Corning has responded adequately by producing admissible evidence in support of its contention that the parties intended requirements contracts. If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *In re Japanese Electronic Products,* 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Because Dow Corning's characterization may be consistent with the express words of the agreement, the evidence is admissible to raise an issue of fact.

In accordance with the foregoing, we will reverse the district court's order of December 16, 1986 granting partial summary judgment for Tigg and we will remand the case for trial.