| Check No. | Date | Payee | Check Amount | Amount Claimed |
|---|---|---|---|---|
| 471 | 1/9/89 | Ernie Taylor (MOC Employee) | 75.00 | 75.00 |
| 472 | 1/9/89 | Lucy Nickel (MOC Employee) | 150.00 | 150.00 |
| 474 | 1/9/89 | Reybold Group #1 (rent for MOC offices) | 1,029.00 | 1,029.00 |
| 480 | 1/13/89 | Cicenti & Roseman (claim for MOC damage before CDS formed). | 1,707.31 | 1,707.31 |
| 481 | 1/13/89 | Lucy Nickel (MOC employee) | 150.00 | 150.00 |
| 485 | 1/13/89 | W.S.F.S. (MOC loan on white truck) | 402.51 | 402.51 |
| 495 | 1/18/89 | Watkins Truck Co. (MOC white truck repairs) | 387.23 | 387.23 |
| 503 | 1/24/89 | Michael Joseph (atty for Getty—Accident w/MOC White truck—1988) | 1,026.77 | 1,026.77 |
| 514 | 2/8/89 | Reybold Venture Group I (rent for MOC offices) | 1,029.00 | 1,029.00 |
| 529 | 2/13/89 | Delaware Auto Ins. Plan (unable to determine amount attributable to CDS, if any) | 2,387.00 | 2,387.00 |
| 536 | 2/15/89 | James W. Romanek/Newark Car Wash (damage done by MOC employees) | 105.00 | 105.00 |
| 543 | 2/21/89 | Norman H. Hasson, Jr., Treasurer (Cecil Co.—camp care taxes) | 3,168.65 | 3,168.65 |
| 549 | 2/23/89 | W.S.F.S. (MOC loan payment) | 402.51 | 402.51 |
| 560 | 2/28/89 | Delmarva Power (electric for MOC offices) | 301.43 | 301.43 |
| 561 | 3/1/89 | Rebold Venture Group I (rent for MOC offices) | 840.00 | 804.00 |
| 570 | 3/3/89 | Mission of Care | 1,110.00 | 1,110.00 |
| 578 | 3/13/89 | Mission of Care | 575.00 | 575.00 |
| 579 | 3/13/89 | Daniel B. Ferry, Esquire | 907.00 | 907.00 |
| 584 | 3/15/89 | Wesley P. McGaha (repairs for MOC) | 111.60 | 111.60 |
| 589 | 3/17/89 | Mission of Care | 508.00 | 508.00 |
| | | | $35,182.96 | $32,048.36 |

In the Matter of The COLUMBIA GAS SYSTEM, INC. and Columbia Gas Transmission Corporation, Debtor.

The FIRST NATIONAL BANK OF BOSTON, Trustee, Plaintiff,

v.

The COLUMBIA GAS SYSTEM, INC., Defendant.

Bankruptcy No. 91-803.
Adv. No. 93-44.

United States Bankruptcy Court, D. Delaware.

March 24, 1994.

Michael B. Joseph, Ferry, Joseph & Fink, P.A., Wilmington, DE (Peter W. Benner, Ira H. Goldman, Richard I. Cohen, Christine E. Rua, Shipman & Goodwin, Hartford, CT, of counsel), for plaintiff.

Richard H. May, James L. Patton, Jr., Timothy J. Snyder, Young, Conaway, Stargatt & Taylor, Wilmington, DE (Stroock & Stroock & Lavan, and Cravath, Swaine & Moore, New York City, of counsel), for defendant.

HELEN S. BALICK, Bankruptcy Judge.

## MEMORANDUM OPINION AND ORDER

The First National Bank of Boston (FNB) in its complaint seeks declaratory and injunctive relief to remedy alleged conduct of Columbia Gas System, Inc. (CG). FNB is the indenture trustee for security holders under an indenture whereby funds were borrowed to provide for an employee stock ownership plan (ESOP) within CG's Employees' Thrift Plan of Columbia Gas System.

FNB's amended complaint contains three grounds: tortious interference under state law, tortious interference under federal common law and breach of duty. FNB's original complaint contained only the first two counts. CG's motion for summary judgment was filed in response to the original complaint.

### I. *Jurisdiction*

■ This action is based upon CG's postpetition conduct relating to a pre-petition contract. The factual and legal issues raised in this proceeding are intertwined with reorganization issues. The action is a core proceeding. *See, e.g., In re West Electronics, Inc.,* 128 B.R. 900 (Bankr.D.N.J.1991); *In re Hughes–Bechtol, Inc.,* 132 B.R. 339 (Bankr. S.D. Ohio 1991), *aff'd,* 144 B.R. 755 (S.D. Ohio 1992).

### II. *Legal Standard for Summary Judgment*

Summary judgment may be granted only if there is no genuine issue of material fact and CG is entitled to judgment as a matter of

law. .Viewing the record in the light most favorable to FNB, the court concludes that CG's motion must be denied. Fed.R.Civ.P. 56(c), *Williams v. Borough of West Chester*, 891 F.2d 458, 463–64 (3d Cir.1989); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir.1986); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

## III. *Facts*

CG established an employee benefit plan (the plan) for its subsidiaries' employees in 1958. In order to hold, administer and invest the plan's assets, CG utilized a trust (the Employees Thrift Plan of Columbia Gas System Trust). Effective April 1990, the plan and trust were enhanced to include a leveraged employee stock ownership plan (the ESOP), a feature designed to provide company stock to the plan's beneficiaries.[1]

To finance the ESOP, the trust borrowed the funds. The ESOP trustee entered into an indenture with the Bank of New York[2] and issued $91,750,000 of 9.875% Amortizing Debentures, Series A, due November 30, 2001. The trustee used the funds to purchase 2,000,000 shares of Columbia's common stock at $45⅞ per share. This stock was deposited and held in an account called Fund "E."

The ESOP device provided for ESOP Debt Service Contributions and ESOP Allocation Contributions to be made by CG and its subsidiaries to the trust. The ESOP trustee was to pay principal and interest on the loan and release stock from Fund "E" and allocate it to participating employees' individual accounts.

The amount of stock released was determined by a mathematical formula. If the amount to be released from Fund "E" under the formula was insufficient to match the employees' contributions, then CG or its subsidiaries were required to provide the difference by making the ESOP Allocation Contributions to the trust to be disbursed to the employee accounts. (ESOP Matching Allocations).

The trust was obligated to repay principal and interest to the debenture holders on May 31 and November 30 of each year, ending November 30, 2001 (indenture section 4.01). CG guaranteed the transaction on a subordinated basis (indenture section 10.01). Prior to CG's July 1991 bankruptcy filing, the trust paid all installments of principal and interest due to debenture holders. Additionally, the ESOP trustee made one post-petition payment—the trustee paid the November 30, 1991 installment in the amount of $5,673,-123.54 by paying $5,626,819.50 on or about December 31, 1991 and $46,304.04 on or about January 15, 1992.

Thereafter, CG announced that further debt service payments would not be made until distribution to all creditors was made under the plan of reorganization. Accordingly, payments of principal and interest due on May 31, 1992 and November 30, 1992 in the amounts of $5,954,664.65 and $5,872,731.71, respectively, were not made.[3] The parties agree that these events constitute default under the indenture section 6.01(1)(a).

Following this default, the indenture trustee filed a proof of claim dated February 14, 1992 in CG's bankruptcy case pursuant to CG's guaranty of the loan transaction.

Notwithstanding the ESOP trustee's failure to pay the principal and interest payments to the debenture holders, the trustee continued to pay the ESOP Matching Allocations to the employee accounts. Shortly thereafter, FNB, in its capacity as indenture trustee representing the interests of the debenture holders, filed this proceeding against CG.

---

1. ESOP's are defined in 26 U.S.C. § 4975(e)(7).

2. The Bank of New York was the original indenture trustee to the transaction at issue. On November 19, 1991, the plaintiff, First National Bank of Boston, replaced the Bank of New York.

3. In addition, since the filing of this proceeding, additional installments have become due and remain unpaid. The amounts of these installments are not part of the record.

## IV. Discussion

CG advances six grounds in support of its motion for summary judgment. For simplicity, these can be classified into three categories: ERISA law, bankruptcy law and contract law.

### A. ERISA Law

The ESOP is an employee benefit plan which is governed by the Employment Retirement Income Security Act of 1974 (ERISA). CG advances three grounds under ERISA law to justify its request for summary judgment: FNB's lack of standing, preemption and ERISA prohibitions.

#### 1. Standing

■ CG argues that since FNB is not a participant, beneficiary or fiduciary, it lacks standing to bring its action under ERISA's civil enforcement scheme. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). FNB counters that its standing to sue under § 502 is irrelevant because its action is not brought under ERISA nor does it rely on ERISA § 502 in any way. The court agrees with FNB. The amended complaint clearly states that the action is brought under state law, federal common law, and contractual duty theories, not ERISA law. CG's contention that this is actually a disguised ERISA § 502(a)(3) action is without merit.

#### 2. Preemption

■ CG argues that FNB's action is preempted by ERISA which provides that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan ..." ERISA § 514(a), 29 U.S.C. § 1144(a). Such laws include "all laws, decisions, rules, regulations, or other State action having the effect of law." ERISA § 514(c)(1), 29 U.S.C. § 1144(c)(1). CG requests that the court construe the provision broadly, in accordance with its interpretation of United States Supreme Court decisions.

FNB argues that the scope of ERISA preemption is not unbounded. It further argues that ERISA preemption does not extend to preempt this state law cause of ac-tion. FNB contends that its unique status distinguishes this case from those actions which ERISA § 514 preempts. Specifically, because FNB is not a plan participant, beneficiary, fiduciary or employer ("a non-principal ERISA entity"), it contends that preemption should not bar its action. The court agrees with FNB and finds that this action is not preempted by ERISA.

Generally, the Supreme Court has construed ERISA § 514 broadly, holding that if a cause of action *relates* to an ERISA-covered plan, it is pre-empted. *Ingersoll–Rand Co., v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 483–84, 112 L.Ed.2d 474 (1990). The definition of "relates to" extends to state actions which "ha[ve] a connection with or reference to such a[n ERISA] plan." *Shaw v. Delta Air Lines,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). However, the Supreme Court has also noted that "[n]otwithstanding its breadth, we have recognized limits to ERISA's pre-emption clause." *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483 (citing *Mackey v. Lanier Collection Agency & Service,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) and *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 23, 107 S.Ct. 2211, 2223–24, 96 L.Ed.2d 1 (1987)).

■ In applying these rules to a preemption analysis, the Court has also stated that "in any pre-emption analysis 'the purpose of Congress is the ultimate touchstone.'" *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (citation omitted). ERISA's purpose is as follows:

It is thus clear that ERISA's pre-emption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Preemption ensures that the administrative practices of a benefit plan

will be governed by only a single set of regulations.

*Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). Therefore, preemption bars most plaintiffs' actions which are brought outside of ERISA under varied state laws. The provision promotes uniformity by forcing plaintiffs to sue under a single statute, ERISA.

Preemption of this cause of action, however would not promote this purpose. If preemption were applied, it would bar FNB's action under state law. FNB cannot bring its action under ERISA because it lacks standing to sue under ERISA § 502, ERISA's exclusive civil enforcement mechanism. *See* part A.1., *supra.* Hence, preemption would bar FNB's state cause of action outside of ERISA and leave it without a cause of action within ERISA.[4] The court concludes that because this claim does not fall within the scope of ERISA § 502, it is not preempted by ERISA § 514. *Cf. Jacob v. Smithkline Beecham,* 824 F.Supp. 552 (E.D.Pa.1993) (stating "[i]n the ERISA context, only claims that fall within the broad scope of ERISA's civil enforcement provision are completely preempted.").

Similar reasoning was applied in *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.,* 944 F.2d 752, 756 (10th Cir. 1991), where a hospice sued an insurance company for misrepresenting that a patient was covered. The hospice had treated the uninsured patient in reliance on the insurance company's statement that he was covered. In response to the defendant's ERISA preemption argument, the court found that:

Denying a third-party provider a state law action based upon misrepresentation by the plan's insurer in no way furthers the purposes of ERISA ... An action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the insurance plan.

*Id.* Like the hospice, FNB is a "third-party" to the ERISA transaction which would be denied the opportunity to bring its claim by ERISA preemption.

A case closely on point with this action also made a distinction based on the plaintiff's status. In *In re American Continental Corp./Lincoln Savings and Loan Securities Litigation,* 794 F.Supp. 1424 (D.Ariz.1992), purchasers of debentures and the Resolution Trust Corporation sued the owner of a savings and loan institution under state law, alleging mismanagement of an ESOP. In finding that preemption was inapplicable, the court stated that preemption governs "rights and obligations as between employee retirement plans and plan participants." *American Continental,* 794 F.Supp. at 1455. Preemption did not govern the tort claims brought by the debenture holders. *Id.*

■ CG argues that there is no Supreme Court decision which limits ERISA preemption to causes of action brought by "principal ERISA entities." However, as FNB explains, the Supreme Court cases upon which CG relies were all brought by "principal ERISA entities."[5] The Court has not di-

---

4. This court's reasoning is not affected by the existence of Columbia Gas' guaranty of the transaction. Even if that guaranty is ultimately enforced, the remedy contained therein is not equivalent to that which FNB seeks in this proceeding.

5. FNB provided the following cases and parenthetical explanations in support of its position: *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (employee's state law wrongful discharge claim was preempted by ERISA); *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (employee's daughter's action for declaratory judgment that Pennsylvania's anti-subrogation law applied to prohibit employer's claim for subroga-

tion); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (employee brought state law claims for breach of contract and bad faith against insurance company were preempted by ERISA); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (former employees sued former employer for breach of individual employment contracts); *District of Columbia v. Gr. Wash. Bd. of Trade,* —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (employer sued District of Columbia and its mayor to enjoin enforcement of District of Columbia's statute governing the continuation of health insurance for injured employees eligible for worker's compensation benefits); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85,

rectly addressed the question of whether actions brought by "non-principal ERISA entities" who lack standing to sue within ERISA are preempted by ERISA.

In dictum, however, the Court made a relevant distinction between two types of actions. *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 832–33, 108 S.Ct. 2182, 2186–87, 100 L.Ed.2d 836 (1988). The first type involved enforcement actions under § 502 brought by ERISA entities to secure specified relief. The second type involved "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan." 486 U.S. at 833 & n. 8, 108 S.Ct. at 2187 & n. 8. In this second category of claims, the plaintiffs were "non-principal ERISA entities." The Court stated that while these claims obviously affected and involved ERISA plans and their trustees, this type of action was not preempted. *Id.* This court agrees with this distinction.

In summary, for all of the reasons stated above, FNB's state law cause of action is not preempted.

Having decided that FNB's state law tortious interference claim is not pre-empted by ERISA, it is not necessary to address FNB's alternative argument that its cause of action may be sustained independently under federal common law other than to note: The United States Supreme Court has held that, in enacting ERISA, Congress established a comprehensive statutory scheme to govern employee benefit plans and further intended that the courts would develop a distinct federal common law of rights and obligations under ERISA regulated plans. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *See e.g. Plucinski v. I.A.M. Nat. Pension Fund*, 875 F.2d 1052 (3rd Cir.1989).

### 3. *ERISA Prohibitions*

■ CG's remaining ERISA argument is best summarized in its final statement on the issue: "[a]ccordingly, the Indenture Trust-

ee's cause of action cannot be maintained because the remedy it seeks, reallocation [of contributions made to employee accounts], is prohibited by ERISA." In its amended complaint, FNB requests several forms of relief, including an order declaring CG's actions to constitute interference with plan compliance, an injunction from further interference, and other relief deemed appropriate by the court. Notwithstanding these clearly stated requests, CG focuses exclusively on the remedy set forth in paragraph 3 of the Amended Complaint and omits discussion of any other remedies. In light of the numerous forms of relief requested, the court rejects CG's argument that summary judgment should be granted on this basis.

### B. *Bankruptcy Law*

CG argues that the relief sought by FNB requires a post-petition payment of a pre-petition debt which is contrary to bankruptcy law and policy, particularly 11 U.S.C. §§ 502, 507 and 362. CG further asserts that FNB seeks to convert its claim under CG's guaranty from subordinated, unsecured and non-priority status to a preferred status. The court rejects this argument for the following reasons.

First, CG's argument assumes that FNB's action is premised on CG's guaranty on the indenture. This is not so. In its complaint, FNB alleges that it is seeking to enforce rights that it possesses within the indenture. FNB is not here seeking to enforce the guaranty.

Second CG's contention that FNB seeks payment as a pre-petition creditor in violation of the Code's priority scheme is incorrect. FNB does not request that funds be taken from the bankruptcy estate to satisfy this debt.

■ Finally, the court rejects CG's argument which states as follows:

Neither the ESOP Trust nor the assets of the ESOP Trust are property of Columbia's estate, and therefore the funds paid to the Indenture Trustee for debt service would flow out of the Columbia subsidiar-

---

103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (employers brought declaratory judgment actions, alleg-

ing that two New York statutes were preempted by ERISA). Plaintiff's Brief, at 19 n. 1.

ies and into the pockets of the Debenture holders without any benefit to Columbia [Gas]. This would totally distort the priorities of the Bankruptcy Code and grant to the Debenture Holders a security interest windfall not expected when they acquired their interests.

CG's vague argument appears to be that if CG's subsidiaries' payments to the trust were characterized as ESOP Debt Service Contributions rather than ESOP Allocation Contributions, the payment would become an improper payment to a pre-petition creditor with no benefit to the estate.

The court rejects this argument because CG cites no legal basis for its "standard." In addition, CG fails to coherently explain how the bankruptcy estate realizes a greater benefit by paying ESOP Allocation Contributions rather than ESOP Debt Service Contributions. ESOP Debt Service Contributions are paid to the trust and then to the debenture holders. ESOP Allocation Contributions are paid to the trust and then to employees' individual accounts. In both situations, the funds are disbursed to third parties with no apparent benefit to the bankruptcy estate. Moreover, payments made by CG or its subsidiaries were post-petition for postpetition obligations.

### C. Contract Law

Columbia Gas asserts two arguments based on contract law.

### 1. Limited Recourse

■ CG argues that FNB's cause of action is outside the scope of the limited recourse provided in the indenture, and therefore, it cannot be brought. FNB, on the other hand, contends that its action fits squarely within the limited recourse permitted and is a means of enforcing this recourse.

The parties' positions hinge upon their different interpretations of indenture and plan language. Ironically, while the parties' interpretations are directly opposed to one another, each contends that the applicable language is "clear and unambiguous." The court finds that the applicable indenture and plan language is clear and unambiguous.

The principal provisions at issue as addressed by the parties are indenture section 6.12 and plan section 4.3. Section 6.12, entitled "Limited Recourse," defines the scope of the debenture holders' remedies and provides:

Notwithstanding anything in this Indenture to the contrary,

(a) *neither the ESOP Trustee nor the Securityholders of any Series in enforcing or obtaining satisfaction of any obligation of the ESOP Trust* hereunder and under the Securities *shall have any recourse,* whether by levy or execution or otherwise, against the ESOP Trust, or any of their properties or assets, *except* that such persons shall have rights to (1) *any cash contributions made by Columbia Gas (or its Subsidiaries) to the ESOP Trust to satisfy the ESOP Trust's obligations under the Securities* and (2) any earnings attributable to the investment of such contributions.

(emphasis added). Similar language was included in the prospectus. This language is required by ERISA and the Internal Revenue Code. 29 C.F.R. § 2550.408b–3(e) and 26 C.F.R. § 54.4975–7(b)(5).

The parties differ in their interpretations of "cash contributions made ... to the ESOP Trust to satisfy the ESOP Trust's obligations under the Securities." Indenture section 6.12(a)(1). CG argues that FNB's recourse is limited to only those payments which CG or its subsidiaries made to the trust *with the intent* to pay ESOP Debt Service Contributions. Accordingly, if CG intended that the payments be characterized as ESOP Allocation Contributions, FNB could not reach the payments.

In addition to relying on the plain language of section 6.12(a)(1), CG relies on references to CG's intent to pay ESOP Debt Service Contributions and ESOP Allocation Contributions in the plan's definitions of those terms. For instance, the plan defines ESOP Debt Service Contributions as "contributions by Employers to the Trust *which are intended* to be used ... to repay principal and interest on an Acquisition Loan." The plan defines ESOP Allocation Contributions

as "contributions made by Employers to the Trust pursuant to Section 4.3(b) *which are intended* to be used to ensure that the company ESOP matching contribution requirements of Section 4.1 are satisfied." CG also cites plan section 4.4(a) providing:

> [R]epayments of principal and interest on any Acquisition Loan shall be made by the Trustee ... only from (a) ESOP Debt Service Contributions made by Employers to enable the Trustee to repay such Acquisition Loan....

CG interprets this provision to mean that the debenture holders may be paid "only from ESOP Debt Service Contributions made expressly for that purpose."

FNB argues that CG's purpose or intent when it pays the trust is immaterial to section 6.12(a)(1), as CG may not choose to pay either ESOP Allocation Contributions or ESOP Debt Service Contributions. FNB contends that all payments made to the trust when installments to debenture holders are due are *automatically* ESOP Debt Service Contributions. Furthermore, these payments are *automatically* subject to recourse under section 6.12(a)(1), as they are "cash contributions made ... to the ESOP Trust to satisfy the ESOP Trust's obligations under the Securities."

FNB's interpretation of indenture section 6.12(a)(1) hinges upon its interpretation of plan section 4.3, the second provision at issue. Plan section 4.3 provides:

> (a) *ESOP Debt Service Contributions.* Whenever one or more Acquisition Loans are outstanding, ESOP Debt Service Contributions *shall* be made by the Company or Employers in cash at such times and in such amounts which, when aggregated with any earnings attributable to any ESOP Debt Service Contributions, any Allocated Dividends and Unallocated Dividends ... will enable the Trustee to pay any currently maturing obligation under such Acquisition Loan ...
>
>      \*    \*    \*    \*    \*    \*
>
> (b) *ESOP Allocation Contributions.* In *addition to* the ESOP Debt Service Contributions referred to in Section 4.3(a),

each Employer will contribute for each Plan Year, or more frequently as directed by the Committee, ESOP Allocation Contributions in cash in an amount equal to the amount required to make up the difference between: (i) the total amount equal to the ESOP Matching Allocations required for the Plan Year pursuant to Section 4.1, and (ii) the total fair market value determined in accordance with Section 4.5(c) of the total of all Leveraged Shares allocated to such eligible Participants' ESOP Company Matching Allocations Accounts during the Plan Year in accordance with Section 4.2. ESOP Allocation Contributions by the Company may be made in shares of Company common stock in an amount equal to the amount required under this Section or in any amount when combined with cash so contributed equals the amount required hereunder. The ESOP Matching Allocation to the Participants' ESOP Company Matching Allocations Accounts on such Valuation Date shall be drawn from either or both of the following sources: (i) Company common stock released directly (or indirectly, through the Intermediate Holding Account) during the Plan Year containing the Valuation Date, and (ii) Company common stock acquired with the ESOP Allocation Contributions made pursuant to this Section 4.3(b).

FNB reads section 4.3 as follows: *First,* CG or its subsidiaries must pay ESOP Debt Service Contributions in accordance with subsection 4.3(a). *Second,* and only if sufficient stock was not released by Fund "E" to match employee contributions, CG or its subsidiaries must make the additional ESOP Allocation Contributions in accordance with subsection 4.3(b).

To support this interpretation, FNB cites the mandatory language "shall," used exclusively in subsection 4.3(a) governing ESOP Debt Service Contributions. Moreover, FNB points to the subsection 4.3(b) stating that ESOP Allocation Contributions are paid "in addition to" the ESOP Debt Service Allocation.

CG counters that plan subsections 4.3(a) and 4.3(b) are not in sequence or order of preference, but rather "stand side by side without one being preferred over the other." Accordingly, CG contends it can pay *either* and is not required to make ESOP Debt Service Contributions first. In support of its position, CG cites the dictionary definition of "in addition to," meaning "besides" or "as well as." The court rejects the analysis of CG.

Neither party addressed other sections between §§ 4.1 through 4.5. Section 4.3 is clear when read in context with those plan sections. These provisions govern a mandatory sequence of events triggered by payment of ESOP Debt Service Contributions to the trust. Specifically, the ESOP trustee uses the Debt Service Contributions to pay principal and interest to the debenture holders. Plan section 4.4(a). The precise amount of this payment then factors into a mathematical formula—the formula which governs the amount of stock which Fund E will release and allocate to employees' personal accounts. Plan sections 4.4 and 4.5. CG or its subsidiaries *must* use this allocation to calculate the payment of ESOP Allocation Contributions. Plan section 4.3(b). Accordingly, CG or its subsidiaries cannot pay ESOP Allocation Contributions without first paying Debt Service Contributions.

■ FNB's analysis is correct to the extent it argues that CG or its subsidiaries' cash payments to the trust made when installments to debenture holders are due are ESOP Debt Service Contributions. FNB's cause of action is within the limited recourse permitted in the indenture. Section 6.12(a)(1). Thus, summary judgment must be denied.

2. *Improper Pursuit of CG Subsidiaries*

■ CG next argues that FNB is improperly pursuing CG subsidiaries. It contends that the indenture limits FNB to pursuing the ESOP Trust for unpaid principal and interest and CG on its guaranty. CG further argues that FNB's requested relief "mak[es] the Columbia [Gas] subsidiaries guarantors of the Debenture and giv[es] the Debenture holders full recourse to ESOP trust assets."

FNB responds that it is not pursuing CG's subsidiaries. Rather, it is pursuing payments previously made to the ESOP trust and disbursed by the ESOP trustee. After reviewing the complaint, the court concludes that FNB is correct. Moreover, since CG fails to explain how its subsidiaries will become guarantors of the debenture, this argument is without merit.

An Order in accordance with this Memorandum Opinion is attached.

### ORDER

AND NOW, March 24, 1994, for the reasons stated in the attached Memorandum Opinion, IT IS ORDERED that the motion of The Columbia Gas System, Inc. for summary judgment is DENIED.