**BARTON & PITTINOS, INC., Plaintiff,**

v.

**SMITHKLINE BEECHAM CORPORATION,
Defendant.**

**Civil Action No. 95–6619.**

United States District Court,
E.D. Pennsylvania.

Sept. 30, 1996.

Nicole D. Galli, Philip H. Lebowitz, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Plaintiff.

James D. Coleman, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Defendant.

## ORDER AND MEMORANDUM

KATZ, District Judge.

**AND NOW,** this 30th day of Sept., 1996, upon consideration of defendant SmithKline Beecham Corporation's Motion for Summary Judgment, the response thereto, the accompanying legal memoranda, and a hearing, it is hereby **ORDERED** that Defendant's Motion is **GRANTED** as to Count I of the complaint, and that Counts II, III, and IV are **DISMISSED** without prejudice.

Plaintiff Barton & Pittinos, Inc. ("B & P") is a Pennsylvania corporation that offers telemarketing services to the pharmaceutical industry. Defendant SmithKline Beecham Corporation ("SKB") is a Pennsylvania pharmaceutical corporation. This case centers on disputed contracts for educational materials and telemarketing services between B & P and SKB to market SKB's Hepatitis–B vaccine, Engerix–B, to nursing homes.

Plaintiff asserts both an antitrust claim and state contract and quasi-contract claims. Plaintiff's antitrust claim in Count I alleges that SKB conspired with consultant pharmacists by severing its ties to B & P after threats by the pharmacists to boycott or interfere with the sale of other SKB products if SKB did not terminate its contract with B & P. (Pl.'s Compl. ¶¶ 39–46, 53–60). While SKB admits B & P is entitled to be compensated for its telemarketing efforts, it also claims that B & P should not be compensated on a commission basis because the parties did not reach an enforceable commission agreement. B & P also asserts express contract, implied in fact contract, and quasi-contract claims in Counts II, III, and IV.

Defendant now moves for summary judgment, discovery having been completed, and argues that 1) B & P does not have standing to assert an antitrust claim and 2) that B & P's claims for payment on a commission basis for its telemarketing should be dismissed because the officer who authorized the contract did not have the authority to approve such a contract, and that B & P knew this officer lacked such authority.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Corp.,* 793 F.2d 509, 511 (3d Cir.1986). If the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

The Third Circuit has set forth a five factor test to resolve an antitrust standing question that mirrors the analysis used by the Supreme Court in *Associated General Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). *In re Lower Lake Erie Iron Ore Antitrust Litigation,* 998 F.2d 1144, 1165–66 (3d Cir.1993), *cert. denied,* 510 U.S. 1091, 114 S.Ct. 921, 127 L.Ed.2d 215 (1994). The five factors are: (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages. *Id.* at 1165–66.

The factors are not to be given specific weight. However, an evaluation of the directness of the injury must be at the forefront of an analysis of an antitrust standing claim. *See Holmes v. Securities Investor*

*Protection Corp,* 503 U.S. 258, 269, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992); *see also* 998 F.2d at 1166.

SKB first offers a general argument that in order to have standing, an antitrust plaintiff needs to be a competitor or consumer within the market in which the antitrust injury allegedly occurred. *See Associated General Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 539, 103 S.Ct. 897, 909, 74 L.Ed.2d 723 (1983). SKB asserts that B & P lacks standing because B & P is not a direct competitor of the consultant pharmacists who sell Engerix–B to nursing homes, but is instead a form of advertising agency that received orders and then passed them on to a pharmaceutical supplier, General Injectables and Vaccines, Inc., ("GIV"). In making this argument, SKB rests in part on B & P's admission that it competed with advertising agencies, not the pharmacists. *See* Pittinos Dep. Ex. B 104. SKB also cites B & P's concession that it could have provided other telemarketing services for SKB even after SKB terminated B & P's contract for marketing Engerix–B. *See* Pittinos Dep. Ex. B 320–321. SKB also relies on *S.D. Collectibles v. Plough, Inc.,* 952 F.2d 211 (8th Cir.1991), in which a manufacturer's representative whose rights were terminated by that manufacturer in favor of another company was found to be neither a competitor nor a consumer for the purpose of antitrust standing. *See* 952 F.2d at 213–14.[1] The court finds this combination of factual admission and legal authority to be persuasive. As a telemarketing company soliciting orders for SKB products, B & P was not in the same market as the consultant pharmacists and cannot be considered a competitor of these pharmacists or SKB. As a result, any harm it has suffered as a result of SKB's actions is due to any breach of the alleged contracts at issue here, rather than antitrust injury.

In light of this characterization of B & P's status, B & P does not fulfill the specific components of the Third Circuit's five-part test. Even if we assume that an antitrust violation of some kind has occurred, with regard to factors (1), (2), and (3), B & P's injury stems from an alleged breach of contract and not antitrust injury, so these factors cannot be met. For example, plaintiff claims contract damages for its alleged antitrust injury, *i.e.,* a seven percent commission, and the type of injury it has suffered cannot be said to be of the kind that the antitrust laws were designed to protect.

The injury here is not sufficiently direct to be considered adequate for standing purposes. At best, plaintiff was a broker working for a commission that took no risk of loss on the sales of Engerix–B. The plaintiff offers a conclusory expert opinion, but it does not change the problems inherent in the underlying facts. If SKB had breached an employment contract with a sales employee to pacify the anticompetitive complaints of the pharmacists, it would be extremely difficult to visualize such an employee's antitrust injury. If GIV had hired B & P and SKB terminated its relationship with GIV to pacify the anticompetitive complaints of the consulting pharmacists, it would also be difficult for B & P to assert antitrust injury. B & P faces similar obstacles here in establishing that its injury is sufficiently direct to suffice for antitrust standing purposes. *See Bodie-Rickett and Associates v. Mars, Inc.,* 957

---

1. Plaintiff relies on a Ninth Circuit case, *Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.,* 951 F.2d 1158 (9th Cir.1991), *cert. denied,* 504 U.S. 913, 112 S.Ct. 1947, 118 L.Ed.2d 552 (1992) to assert that B & P is in fact a competitor of the consultant pharmacists. In that case, the Ninth Circuit employed a wider definition of the relevant market and examined the functions each party performed to determine whether the plaintiff was a "competitor." This court finds this approach to be overly broad and finds the Eighth Circuit approach to be more closely aligned with the five-part test set out by the Supreme Court and reiterated by the Third Circuit in *In re Lower Lake Erie.*

Even if this court were to employ the Ninth Circuit's approach, however, the Ninth Circuit's analysis of the facts of that case indicate that the facts of this case cannot be stretched to turn B & P into a competitor of the consultant pharmacists. The plaintiff in *Yellow Pages* had in fact performed services that basically competed with the services the defendant provided. In the present case, the overlap between the services provided by the plaintiff and the consultant pharmacists was tangential. The pharmacists sold Engerix–B; B & P brokered sales by GIV.

F.2d 287 (6th Cir.1992) (terminating a brokers' contract due to a reorganization of the customer company not an antitrust violation); *see also L & M Beverage Co., Inc. v. Anheuser–Busch, Inc.,* Civ.A. No. 85–6937, 1987 WL 16682, *2 (E.D.Pa.).

As for factor (4), GIV or the nursing homes involved would serve as more direct alleged antitrust victims in this case than B & P; GIV may have lost revenues as a result of the end of the arrangement between B & P and SKB, and the nursing homes may have lost access to lower prices for Engerix–B. With regard to factor (5), allowing for B & P to have standing for an antitrust case when its case is, at its core, a contract case, has the potential to result in a duplicative recovery or complexity in apportioning damages. It is complex to differentiate damages between GIV and B & P; any attempt to do so would implicate the factual core of this dispute and pose a high potential for duplicative recovery, as GIV's damages could arguably include all or a portion of the contract damages claimed by the plaintiff. As a result, this case demonstrates the concern voiced in *Illinois Brick* that overlapping parties not compete for the same pool of alleged illegal profits from antitrust activity. *See Illinois Brick Co. v. Illinois,* 431 U.S. 720, 742–45, 97 S.Ct. 2061, 2073–74, 52 L.Ed.2d 707 (1977); *In re Lower Lake Erie Iron Ore Antitrust Litigation,* 998 F.2d 1144, 1169 (3d Cir.1993). In sum, there may be a possible antitrust suit on these facts, but B & P is not the proper plaintiff to bring that suit.

■ Counts II, III, and IV, state law claims with no independent jurisdictional basis, are dismissed without prejudice for plaintiff to pursue in state court. The court declines to exercise supplemental jurisdiction over the state law claims.